## Inter-Southern Life Insurance Company v. First National Bank of Hazard, Kentucky.

(Decided November 27, 1917.)

## Appeal from Perry Circuit Court.

1. Principal and Agent—Negotiable Instrument Law.—Under the Negotiable Instrument Law, an agent, in order to bind his principal as a party to a negotiable instrument, must possess written authority from the principal to do so.

2. Principal and Agent—Ratification.—In order to ratify the unauthorized acts of an agent the principal must possess either actual or implied knowledge of such unauthorized acts, as there can be no ratification in the absence of knowledge upon the party sought to be charged of the acts to be ratified.

3. Principal and Agent—Ratification.—Where the facts upon which the principal acts which it is claimed constitute ratification are consistent with the agent having observed his actual authority, no implied or constructive knowledge will be imputed to the principal of any violations by the agent of his authority so as to bind the principal under the doctrine of ratification.

4. Principal and Agent—Ratification.—Where the agent for an insurance company, with authority only to sell stock in that company and to remit to his principal therefor, in violation of his authority undertakes to bind his principal as an endorser upon a note executed by a purchaser for stock, and afterwards discounts the note in bank and remits the proceeds to the principal, the latter having no knowledge of the unauthorized act of the agent,

and the principal issued and delivered the stock upon the receipt of the certificate of deposit: Held that there was no ratification by the principal of the unauthorized act of the agent in attempting to bind it as an endorser upon the note arising from the fact of the principal accepting and appropriating the deposit evidenced by the certificate which the agent sent him.

CHESTER GOURLEY, SAMUEL H. STRAUS, HELM BRUCE and BRUCE & BULLITT for appellant.

WILLIS W. REEVES, JESSE MORGAN and BAILEY P. WOOTEN for appellee.

Opinion of the Court by Judge Thomas—Reversing.

J. B. Wakefield and one Bradley were agents for the appellant (defendant below) for the purpose of selling its treasury stock, it being a life insurance corporation, and on August 16, 1913, the agents effected a sale of fifty shares of the stock to E. M. Strong, at Hazard, Kentucky. They took from him in payment therefor this note: "Hazard, Ky., August 16, 1913. Twelve months after date I promise to pay to the order of myself One Thousand Dollars, negotiable and payable at the First National Bank of Hazard, Kentucky, for value received, with interest at the rate of six per cent. per annum from date until paid. Endorsers waive demand, protest and notice of protest. W. M. Strong."

On the back of the note Strong wrote his name, and Wakefield made this endorsement: "Inter-Southern Life Insurance Company by J. W. Wakefield, agent." There is also this further endorsement on the back of the note: "Fifty shares of stock attached as additional security."

The appellee (plaintiff below) is a banking institution located at Hazard, Kentucky, and incorporated under the United States statutes as a national bank. After the note had been executed and endorsed as indicated, it, together with some other notes, which had been executed for stock, was negotiated to the plaintiff. There was also deposited in the bank by the agents of defendant some cash which they had received for the sale of other stock. This, with the proceeds of the notes, made a total sum of $1,700.00, and the bank issued to the insurance company a deposit certificate for that amount, bearing interest at the rate of three per cent. annually, provided the deposit should remain in the bank for as long as one year, but if checked out sooner no interest

would be allowed. This certificate was sent to the defendant at its place of business in Louisville, Kentucky, whereupon it issued to Strong a certificate for the stock he had purchased and mailed it to the plaintiff at Hazard, Kentucky, and it attached the stock as collateral to the note. Within about three months thereafter the defendant negotiated the deposit certificate to the Fidelity & Columbia Trust Company, of Louisville, Kentucky, and within less than a year it collected same from the plaintiff.

After the maturity of the note, for some reason, the maker, Strong, declined to pay it, and the plaintiff notified the defendant of that fact and requested either a payment of the note or a renewal thereof, both of which were declined upon the ground that defendant had never heard of the note, and that if its name appeared upon it as an endorser the same was done by Wakefield without authority from it, either in writing or otherwise, and that neither Wakefield nor Bradley was authorized, expressly or impliedly, to subscribe its name to negotiable paper as endorser, or in any capacity. This refusal was followed by this suit filed by the plaintiff in the Perry circuit court against Strong and the appellant, seeking a recovery on the note.

The answer relied upon the facts hereinbefore recited, which were denied by a reply, the second paragraph of which insisted upon the fact that defendant had accepted the proceeds of the note and it had thereby ratified the act of Wakefield in placing its name as an endorser thereon, and that it was therefore estopped to deny his authority to so bind it. These allegations were put in issue, and after the evidence was heard the court gave an instruction directing the jury to return a verdict in favor of plaintiff, which was done, and this appeal calls in question the correctness of the judgment based upon that verdict.

There is no appeal prosecuted by Strong, and the only questions which will be discussed are those pertaining to the correctness of the judgment against the insurance company.

The chief contention made by defendant (insurance company) on this appeal is that Wakefield at the time had no such legal authority as that he could bind it by writing its name on the back of the note as an endorser thereof. It will be observed at the outset that the defendant insurance company was no party to the note until Wakefield endorsed its name thereon. The paper was

a complete instrument before that, and the endorsment by the insurance company was not necessary for the purpose of negotiating it or transmitting title thereto. The undisputed facts show that the employment of Wakefield was by parol only, no writing of any character evidencing any authority proposed to be conferred upon him was executed by the insurance company. Whatever authority he had as its agent was oral, only.

Subsection 19, of section 3720b of the Kentucky Statutes, known as the Negotiable Instruments Act, says: "The signature of any party may be made by an agent duly authorized in writing."

This court in the recent case of Finley v. Smith, 165 Ky. 445, had under consideration the force and effect, as well as the application of the subsection of the statute above quoted. It is true that in that case the supposed agent had undertaken to obligate the appellant as the *maker* of the note there involved, but inasmuch as the Negotiable Instrument Act (subsection 66) makes endorsers of negotiable paper primarily liable for its payment with the maker, we are unable to detect any difference in the character of proof to establish the authority of an agent to execute the paper in the name of his supposed principal as maker and authority to bind his supposed principal as endorser. Besides, the subsection quoted applies to all *parties* to negotiable paper, whether they be makers or endorsers. In the case, *supra,* in discussing the requirement that the authority of the agent should be in writing, it is said:

"What is known as the Negotiable Instrument Law is contained in section 3720b of the Kentucky Statutes, and section 19 of this act reads: 'The signature of any party may be made by an agent duly authorized in writing.' And so if the note in suit was a negotiable instrument within the meaning of this law, and the name of Finley was not signed to the note either by himself or by an agent duly authorized in writing, he is not liable on the note, if section 19 is given the construction and effect that its reading implies; or, in other words, a party to a negotiable instrument is not bound unless his signature be made by himself or 'be made by an agent duly authorized in writing.' "

The opinion then proceeds to demonstrate that the legislature intended to effect a radical change in the law of commercial paper by the enactment of the subsection in question, because as the act was first introduced there was no requirement that the signature of a party made

by an agent should be done under written authority only, and then says: "The mere fact that the change indicated was made furnishes in itself convincing evidence of the legislative intent that the signature of the party could not be made by an agent unless the agent was duly authorized in writing." As the agent in that case was not authorized to sign the appellant's name to the note as maker, it was held that the latter was not bound thereon, and the judgment which was rendered against him by the trial court was reversed.

It is not pretended that the note involved in the present case is not a negotiable instrument within the meaning of the Negotiable Instrument Act, and it would seem to follow that inasmuch as there was no written authority shown authorizing Wakefield to sign the name of the insurance company as endorser that it would not be liable in this case, and the principle announced in the Finley case would be conclusive of this one. We would not be understood, however, as determining that the insurance company would be liable under the facts of this case if the statute referred to did not exist, but in view of the statute it is unnecessary to enter into a discussion of that feature of the case.

It is insisted by counsel for plaintiff that notwithstanding the agent, Wakefield, may have acted without authority and in a manner so as not to bind his principal, the insurance company, still by its act and conduct it has ratified the act of Wakefield in endorsing its name to the note. The undisputed authority, as shown by the evidence, which the insurance company gave to Wakefield, as well as to Bradley, was to sell the stock for cash only, or its equivalent. They were not even authorized to accept a note payable to the company, and the evidence does not show that any stock was ever sold by the agents mentioned or any other agent, as for that matter, in consideration of any note executed to the company. No agent was entitled to his commission until he secured the cash, or its equal, which in this particular instance was a deposit in bank. It is neither pretended nor intimated in the testimony that defendant even knew of the existence of the note, much less of its name being thereon as an endorser, until after it became due and payment demanded, which it promptly refused. It is true it mailed the stock which it issued to Strong to the plaintiff bank, but it is not even pretended that it knew at that time why the stock was thus required to be mailed.

Such an act is just as consistent with the theory that the purchaser of the stock had so requested, or that the bank would want the stock as collateral to assist in some way the purchaser to raise the money necessary to pay for the stock as it would be that the stock was intended to secure a note upon which the insurance company was in some way liable.   Indeed, it would be more plausible to conclude that either of the first two purposes were intended than that the latter was intended.   The fact of the deposit certificate having been issued in the name of the bank is not inconsistent with the deposit having been placed in the bank to the credit of the insurance company without it incurring any obligation.   This could have been done by the deposit being made in cash or by a note having been executed to the agent and by him discounted to the bank, or by the purchaser of the stock in some way arranging with the bank to obtain the money with which to pay for the stock.

Nor can it be said that defendant had imputed or constructive knowledge of the attempted exercise of authority by Wakefield arising from the fact of the deposit having been made to its credit and the certificate thereof issued to it, because these facts were in nowise inconsistent (as we have seen) with the due observance by the agent of his actual authority.

The defendant under the facts of this case is not estopped to deny Wakefield's lack of authority in writing to bind it as an endorser on the note, because one of the elements of an estoppel is that the one estopped has in some way induced another to act to his prejudice under the belief that a certain state of facts exists.   There is no representation in this case, either by word or act, upon the part of the insurance company that Wakefield had *written* authority to endorse its name upon the note, and no rule is more familiar than the one requiring those dealing with an agent to take notice of such agent's authority, and the burden is upon such one to establish the agency.

In Mechem on Agency, vol. 1, section 255, the general rule is stated to be that ''The law itself makes no presumption of agency; it is always a fact to be proved; and the person who alleges it has the burden of proving it by the preponderance of evidence.''

This same general rule as quoted from 31 Cyc. 1222, is recognized and adopted by this court in the case of Dodds v. Maryland Casualty Company, 166 Ky., page 70, wherein this quotation is made from that volume of Cyc:

"Every person, therefore, who undertakes to deal with an alleged agent is put upon inquiry, and must discover at his peril that such pretended agent has authority, that it is in its nature and extent sufficient to permit him to do the proposed act, and that its source can be traced to the will of the alleged principal. No third person can hold the principal if the agent acted without authority, or outside the scope of the authority really or apparently possessed by such agent." See, also, Goodshaw v. Struck, 109 Ky. 285, and Louisville Foundry Co. v. Patterson, 29 Ky. Law Reporter 349.

The only legal authority which the agent in this case could have in order to bind his principal would be written authority, for under the statute no other authority "is in its nature and extent sufficient to permit him to do the proposed act." The plaintiff must be presumed to know the law, and in the absence of some act or conduct on the part of the defendant calculated to inspire the belief that Wakefield possessed the requisite authority to bind it as an endorser upon the note, we fail to discover wherein the doctrine of estoppel may be applied.

Furthermore, it is fundamental law that ratification cannot take place without the one charged with it having knowledge of the facts. All of the authorities announce this to be the rule, and in the case of Elk Valley Coal Company v. Thompson, 150 Ky. 614, recognizing it, this court in its opinion said: "It is further a well-settled rule that ratification by acquiescence can only arise when the party acquiescing has full knowledge of the facts relating to the act attempted to be ratified, or holds such relation to the thing that knowledge will be presumed, as a party will not be held to ratify an act that he knew nothing about." This statement is fortified by a long list of authorities copied into the opinion which we will not here repeat.

We are not so much concerned here as to what *acts* will constitute ratification, for whatever the *acts* they must have been done with knowledge concerning the facts to be ratified, and the authorities relied upon by the plaintiff do not assert a contrary rule. For instance, in the case of Givens v. Cord, 44 S. W. 665, the quotation made in the brief starts out by saying: "One who with full knowledge accepts the proceeds of an unauthorized sale of his property is estopped to dispute the validity of the sale." In the quotation made from 31 Cyc. 1267, is this statement: "If a principal, with full

knowledge of all the material facts, takes and retains the benefits of an unauthorized act of an agent, he thereby ratifies such act," etc. Other authorities referred to and relied upon will be found in line with those just mentioned.

As we have seen, the defendant was wholly without knowledge, when it accepted the certificate of deposit, that any part of it represented the proceeds of any note or paper upon which it was in anywise bound, and the fact that the money had been deposited with plaintiff in its name furnished no information that would lead the defendant to believe that it had incurred any liability to the bank. It is simply a case where an agent exceeded his authority, and where the one dealing with him did so without being in any way induced or encouraged by the supposed principal, and without sufficiently informing himself as to the extent of the agent's authority.

Our conclusion is, that the court erred in failing to direct a verdict for the defendant insurance company, as requested by it.

Wherefore, the judgment is reversed, with directions to set aside the judgment and grant a new trial, and for proceedings consistent with this opinion.