### Eversole, et al. v. Barker.

(Decided June 3, 1924.)

### Appeal from Leslie Circuit Court.

1. Landlord and Tenant—Moving Off of Premises and Back Within Three Days Without Notice Not Surrender of Possession.—There was no surrender of possession or termination of tenancy, where tenant moved off premises and back within three days without notice to his landlord.

2. Principal and Agent—Unauthorized Lease Does Not Bind Principal.—An agent may lease land for his principal, but existence of agency must be shown, as no third person can hold principal if agent acts without authority.

3. Principal and Agent—Lease Made by Agent of Lessor should be Made in Name of His Principal.—A lease made by agent of lessor should be made in name of his principal.

4. Parent and Child—No Presumption of Agency for Mother by Son Leasing Land.—Presumption of agency of son for mother does not arise, where he leases land in his own name and tenant under lease in his name could show an outstanding title as against persons claiming through mother.

LEWIS & LEWIS for appellants.

M. C. BEGLEY, C. W. HOSKINS, JOHN L. DIXON, CLEON, K. CALVERT and L. D. LEWIS for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Elihu Garrison and his wife, Martha, owned separate tracts of land, both of which were mortgaged to the Hyden Bank to secure a debt he was owing. After the death of Elihu Garrison, foreclosure proceedings were instituted and the land sold at decretal sale, each tract bringing less than two-thirds of its appraised value. This occurred in June, 1914. In February, 1915, the administrator of the estate of Elihu Garrison, J. M. Garrison, who was also a son of Martha Garrison, had a conversation with one of the purchasers of the land, who told him that he had the entire year within which to redeem it, and that in the meantime he might rent it if he desired.

It does not appear that J. M. Garrison had any conversation with his mother in reference thereto, but he did in his own name execute a rental contract with the defendant, Sam Barker, under which Barker moved on the land in 1915, paying to J. M. Garrison one-third of the proceeds received as rent.

Since that time Barker has lived on the land undisturbed. It further appears that Martha Garrison held this land by virtue of a patent issued to her in the year 1889, and that it lay entirely within a 40,000 acre patent issued to John A. Sausade in the year 1872, but that in December, 1909, Elihu Garrison had put a house thereon and that one of his children moved into it, and that he

was paying taxes on it up to his death, and his family continued to do so thereafter, keeping someone on the premises continuously until the time Barker moved in.

In the year 1913 the Commonwealth's attorney of that district filed a suit in the Leslie circuit court under the act of 1906, seeking to forfeit the title of the owners in the Sausade patent for failing to pay taxes under the provisions of that act. In this he was successful and on February 14, 1913, a judgment was rendered in accordance with the prayer of the petition.

Later, in February, 1915, a sale was ordered under the "forfeiture act" and sale took place as directed on June 8th, 1915, at which F. M. Sackett, of Louisville, became the purchaser of all the forfeited tract of land with the exception of such parts as were held by occupying claimants under the provisions of the act.

This suit was filed in 1921 by the purchasers at decretal sale of the interest of Martha Garrison, alleging ownership; that Barker was a tenant at will or sufferance; that he had held over and injured the property, and seeking to recover possession and damages.

The answer traversed the allegations of the petition and pleaded title in Sackett by virtue of the proceedings in the other action. By reply plaintiffs pleaded a continuous possession and payment of taxes upon the lands and the fact that their predecessors in title were occupying claimants at the time of the judgment and sale in the forfeiture suit and at each of said dates had been in possession thereof for more than five years prior thereto and thereby title had vested in Martha Garrison; also that plaintiffs' vendors were in possession at the time of the execution of the deed to Sackett and that it was champertous and validated the title of their vendors, which inured to their benefit. This was controverted by reply.

There is some evidence that Barker attempted to surrender the premises at one time and moved back again, but the entire transaction did not cover three days and no notice thereof was given to Garrison and such farcical action on his part could not be construed as a surrender of his possession or as terminating his tenancy; and if he was indeed a tenant of Mrs. Garrison, the other allegations of the reply are practically established and plaintiff's contention must be upheld.

The contract reads:

"This contract made and entered into this the 12th day of February, 1915, by and between J. S. M. Garrison, of the first part, and S. B. Barker of the second part, witnesseth: That said first party hereby rents to second party the gap field, except that portion south of a straight line from a double chestnut near the northeast corner of the garden paling to a black stump near the fence, near the lower end of an old turnip patch on the outside and including all below pailing, this together with a garden is to be furnished free to second party. Said first party further agrees to allow second party using fruit off the farm. Said second party binds himself to take the land as it now is, and clean it up himself, and pay to said first party one-third of the crop made thereon.

"J. S. M. GARRISON,
SAM BARKER."

It will be observed that Mrs. Martha Garrison's name does not appear in the contract; there is nothing in it to show that J. S. M. Garrison was acting as her agent or was authorized to act for her in any way, nor is there anything in the evidence elsewhere showing that she did so authorize him. Unquestionably an agent may lease land for his principal, but the existence of the agency must be shown, and as said in 31 Cyc. 1322:

"It is fundamental in the law of principal and agent that the power of every agent to bind his principal rests upon the authority conferred upon him by that principal. Without this authority for which the principal himself, by act or conduct, has become responsible, the agent can bind only himself. Every person therefore who undertakes to deal with an alleged agent is put upon inquiry, and must discover at his peril that such pretended agent has authority, that it is in its nature and extent sufficient to permit him to do the proposed act, and that its source can be traced to the will of the alleged principal. No third person can hold the principal if the agent acted without authority or outside the scope of the authority really or apparently possessed by such agent."

See also Dobbs v. Maryland Casualty Company, 166 Ky. 73; I. & S. Ins. Co. v. Bank, 178 Ky. 95; Godshaw v. Struck, 109 Ky. 285.

The law is thus laid down in 16 R. C. L. page 597:

"A lease made by an agent of the lessor should be made in the name of his principal, and the general rule that mere descriptive words of agency superadded to the name of the agent, are regarded as simply describing the person, apply to leases as well as other contracts, and if a lease is under seal, and executed by the agent in his own name as lessor, though words designating his agency are superadded he would be personally liable as lessor."

In the case of Johnson v. Park, 17 S. W. 273, it was said:

"And the main and decisive question is, whether Mrs. Everett was authorized as agent of Mrs. Park to make and complete the contract relied on by the defendants, which is a written obligation, signed by the three defendants, to cultivate the land as therein mentioned, for one year from March 1, 1886, and to pay the stipulated rent of $400.00. . . . There is no substantive proof in the record that Mrs. Everett was authorized as agent of her sister to make the contract. On the contrary, they both testify she was not, nor do the circumstances proved show Mrs. Park agreed or intended for her sister to enter into and complete a contract for lease of the land without her own sanction and approval; and, such being the state of case, it follows the defendants were not justified in accepting and treating Mrs. Everett as either general or special agent to make the contract, and in entering on the land by her direction or permission, even if it had been given."

As James M. Garrison was a son of Martha Garrison it may be that he thought he had a right to act for her, but a presumption of law cannot arise from such relationship, and in view of the fact that he was administrator of his father's estate, and transacted all of the business in his own name, it is more likely that he was acting in his own behalf; at any rate the evidence fails to show that he was the agent of Martha J. Garrison, and it follows that the defendant was not shown to be her tenant, which being the case he was entitled to show an outstanding title in a third person.

Wherefore judgment is affirmed.