## Lazarus' Adm'x v. Hall.

June 10, 1941.

200

Harlin & Harlin and Joe S. Garman for appellant.

G. D. Milliken and M. D. Burton for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Appellee, who was the plaintiff below, brought this action in the Warren circuit court against appellant as administratrix with the will annexed of Harry Lazarus, deceased, seeking to recover of the estate of Harry Lazarus commission on the sale of a farm which Lazarus sold to Robert Hutchinson in February, 1937.

Plaintiff alleged in his petition that Harry Lazarus, Sr., died in June, 1939, leaving a will which was duly probated, and thereafter Mrs. Lazarus qualified as administratrix with the will annexed and is still acting as the qualified administratrix of the estate of her deceased husband.

Plaintiff further stated that in the latter part of 1936, or the early part of 1937, Harry Lazarus "or his agent" employed plaintiff to find a purchaser for and to sell for decedent a certain farm consisting of 427.64 acres and that the decedent "or his agent" stated that they would put a price upon the farm and the decedent "or his agent" agreed to pay the plaintiff for his services should he find a purchaser and a sale was made, and the payment for his services would be consistent with the fees charged in Warren county by real estate agents on real estate sales. Plaintiff further stated that he

found a purchaser for the farm and the farm was sold to the said purchaser, Hutchinson, by the decedent and his wife at a price fixed by the decedent, to wit, $34,640; that a reasonable fee or commission for making the sale according to real estate commissions charged in Warren county would be $1,099.20, which sum is now due from the decedent's estate to the plaintiff. He further alleged that his claim against the estate of the decedent was properly prepared and presented to the defendant, administratrix, which she refused to pay and prayed to recover the sum stated above.

Defendant filed her answer which consisted of a traverse only. Upon a trial of the case the jury returned a verdict in favor of the plaintiff for the sum of $600. Motion and ground for a new trial was filed and overruled, and this appeal follows.

Numerous grounds for reversal are assigned and argued in brief of appellant, all of which were included in the motion and ground for a new trial, but it becomes unnecessary for us to discuss and determine all of them. Ground number four is that the verdict of the jury is flagrantly against the testimony and is not supported by the testimony and was the result of passion and prejudice on the part of the jury. Ground number six is that the verdict should be set aside because the testimony is conclusive that the plaintiff had no right of action against the estate of Harry Lazarus and no right of recovery.

Plaintiff testified that Hutchinson came to his house and wanted him to go with him (Hutchinson) to look at the Porter farm and they went to that farm but it did not suit Hutchinson and they then went and looked over some other farms and then came back to town. Hutchinson was preparing to go home and plaintiff told him that if he could locate a farm that he thought would suit him, he would write to him; that either that night or the next night he wrote to Hutchinson about three farms including the Lazarus farm; that soon after Hutchinson received his letter he came back to Bowling Green and they went out and looked at two or three farms and then came back to town and after lunch they went to the Lazarus farm. He said that when they arrived at the Lazarus farm a man named Roberts, who was running the farm, was there and perhaps three or four other men whom he did not know. Soon after they arrived at the

Lazarus farm. Mrs. Lazarus and Forrest Borders came to the farm and were looking around at the barn. In answer to the request of counsel to state to the jury the conversation, if any, he had with Mrs. Lazarus, he said:

"Well, they first come in and was looking around at the barn, some way, about some cows or something. After awhile—he was in the chute of the big barn there—I saw Mrs. Lazarus come in, and she talked to Mr. Hutchinson's father some little time, and me, together. We all talked there. After awhile Mr. Hutchinson's father left and went back to look at some corn or something, and while he was gone I said to her, 'These men want to buy the farm' and I says, 'I'm going to try to get them to buy it, but' I says, 'They like the Smith farm over there, and if they do buy it I want the commission;' and she said, 'Well, I will see that you get it.' When they got ready to leave that evening, when they all come in and got ready to leave, she got in the car with Mr. Borders, and to impress it on her mind I went back out to the car and told her what I had told her at the barn, and she says, 'Well, we will take care of you if they buy the farm.'"

"Q. Mr. Hall, after Mrs. Lazarus had left and after Mr. Hutchinson got back from looking over the farm, what did you all do then, if anything? A. Well, we went to Mr. Lazarus' home. They didn't know the way, and I went with them and showed them where he lived. They went in the house and I introduced them to Mr. Lazarus and told him they wanted to buy his farm.

"Q. Along with that, Mr. Hall, when you got in the house and talked to Mr. Lazarus, was he able to be up? A. He was sitting up when we got there.

"Q. Do you personally know, from having lived in Bowling Green, whether Mr. Lazarus had been able to get out in the open and attend to his business for several years before that time, or not? A. Yes, he'd been feeble a good while.

"Q. Well, you introduced Mr. Hutchinson to Mr. Lazarus, or both the Hutchinsons to Mr. Lazarus, and then what was the conversation about? A. About the farm. He asked Mr. Lazarus what

he asked ·for it, and he told him ninety dollars an acre. They talked about it some little time, and it was getting late—it was then after dark. I just remarked it was getting late, 'you all had better leave and come back in the morning and talk it over.' So they all left. When they left, Mrs. Lazarus and me walked in behind going out of the door. I said to her, 'You ought to try to sell these men this farm, because they've got the money to pay for it,' and she said, 'Well, we are going to try to sell it.' * * *

"Q. Relative to the trade, now, did either Mrs. Lazarus or Mr. Lazarus or the Hutchinsons get in touch with you again? A. Again, after that?

"Q. Yes, sir. A. Yes. That, I think, was on Saturday evening. Monday was county court day, and I was walking along the street close to the court house and Mr. Hutchinson's father was sitting in the car, and I went and got in the car with him. It wasn't long until Mr. Bob Hutchinson come out and got in the car and says, 'I want to drive out to Bob Rodes's. Will you go with us?' I told him, 'Yes.' We went out there and he talked to him a few minutes and come back to town. When he got back to town he says, 'If I should happen to buy this place, what are you going to charge me for helping me?' You see, I had been with him two days. I says, 'Well—' it struck me that he was going to give me a check, and —* * * He said to me, 'What are you going to charge me to help me in this business,' or something to that effect. I says, 'If you will give me a hundred dollars, I'll pay you back when I settle with the Lazaruses.' He says, 'Wouldn't you take seventy-five?' Well, I says, 'We'll fix that up some way.' Of course, I didn't care whether it was seventy-five or a hundred, because I was going to pay it back. So in about a week or ten days—I guess about ten days—I heard they had come back and bought the farm. As soon as I heard it I went up to Mr. Lazarus's house to see about the commission, and when I got up there Mr. Lazarus was in the bed. I didn't get to talk to him, but Mrs. Lazarus refused to give me anything—said they didn't owe me any commission. That was about all there was to it.

"Q. The check you got for seventy-five dollars from Mr. Hutchinson was gotten under an agreement with him to pay it back when you collected your commission? A. Yes, sir, that was the understanding. * * *

"Q. Mr. Hall, at the time you went up there and Mr. Lazarus was sick and you talked to Mrs. Lazarus, in the conversation you had with her whereby she refused to pay you, did you remind Mrs. Lazarus of the conversation she had had with you in which she had stated that she would see that you got your commission? A. Yes, sir.

"Q. What did she say about that, if anything? A. She says, 'Well, I didn't tell Mr. Lazarus about that.' That was about all she said about it."

Plaintiff was corroborated by another witness who claimed that he was present at the barn on the Lazarus farm and heard Mrs. Lazarus tell plaintiff that she would see that he was paid for his services in the event the farm was sold.

Mrs. Lazarus denied the alleged conversation with plaintiff and specifically denied that she at any time or place promised him that she would see that he was paid for his services in connection with the sale of the farm, or otherwise. She also denied that plaintiff went to the Lazarus home on the second call of Hutchinson, the purchaser. Mr. Hutchinson, testifying for the defendant, denied that plaintiff went with him to the home of Lazarus at any time. He said that plaintiff asked him if he knew the way to the Lazarus home and he told him that he would find the way. Mr. Hutchinson further testified that the $75 he paid to plaintiff was not a loan but was intended as payment to plaintiff in full for his services in assisting him in locating a farm which he might purchase or desire to purchase, and that after the trade was made it was understood between him and plaintiff that the $75 was all that plaintiff was to receive for his services and it was also understood that he was not to collect a commission from both parties. Mr. Roberts, the tenant on the farm, testified that he rented the farm of Mr. Lazarus and all his dealings and transactions were with Mr. Lazarus and he had no connection with Mrs. Lazarus in the renting of the farm or in any transaction or business in relation thereto. He further stated

that Mr. Lazarus frequently came to the farm and looked over it and he took orders from him. Referring again to Mrs. Lazarus' testimony in connection with her denial that she promised plaintiff any commission or other compensation for his services, she said she had no right to do so because Mr. Lazarus owned the farm and she had nothing to do with the sale of it.

Another circumstance insisted on for defendant is the fact that Mr. Lazarus lived two and one-half years after the sale of the farm and during that time plaintiff made no attempt to collect his commission from Mr. Lazarus and does not even claim that he ever mentioned it to Mr. Lazarus. In plaintiff's own testimony he said that after the sale of the farm he went to the Lazarus home and asked Mrs. Lazarus about his commission and she told him that she owed him nothing, and further said that upon reminding her of her promise, she made the further statement that she had not told Mr. Lazarus anything about it. Nor is there any evidence tending to show that any of the alleged conversations between plaintiff and Mrs. Lazarus were in the presence of Mr. Lazarus or that he ever had any information or knowledge of the alleged promise that Mrs. Lazarus made to the plaintiff. So far as the record shows, during the remaining two and one-half years of Mr. Lazarus' life, he was entirely ignorant of any claim of plaintiff against him or Mrs. Lazarus or anyone in connection with the sale of the farm.

Since, however, the case may be determined upon a ground other than the merits of the conflicting evidence, we express no opinion as to whether or not the evidence is sufficient to sustain the verdict, if there had been any evidence of a substantial nature to establish the relation of principal and agent between Mrs. Lazarus and her husband.

Since the burden of proving that Mrs. Lazarus was the agent of her husband rested upon the plaintiff (Dodds v. Maryland Casualty Company, 166 Ky. 70, 178 S. W. 1134; Inter-Southern Life Insurance Company v. First National Bank of Hazard, 178 Ky. 95, 198 S. W. 563), we do not think that he has sustained that burden. Marital relations do not create a presumption of agency between husband and wife when dealing with each other's property and such agency, when denied, must be proved the same as any other agency.

According to plaintiff's own evidence, Mrs. Lazarus merely made the statement that if the farm was sold she would see that he, plaintiff, was paid for his services. Even if Mrs. Lazarus had expressly stated to plaintiff that she was the agent of her husband, such statement would not be admissible in evidence to establish agency. Smither et al. v. J. R. Watkins Company, 223 Ky. 777, 4 S. W. (2d) 707; Wright v. Wheat, 224 Ky. 386, 6 S. W. (2d) 458.

Since plaintiff relies solely upon the bare statement of Mrs. Lazarus that she would see that he was paid for his services if the farm was sold, without any facts tending to show that Mrs. Lazarus was the agent of her husband and without any showing that her alleged promise was ever brought to the attention or knowledge of Mr. Lazarus in his lifetime, or that he acquiesced therein or did anything to ratify her alleged promise, it is obvious that plaintiff wholly failed to establish the relationship of principal and agent between Mrs. Lazarus and her husband.

It follows from what has been said that the court should have sustained defendant's motion for a directed verdict in her favor.

For reasons stated, the judgment is reversed and remanded for proceedings consistent with this opinion.