JONES, JUDGE:
*39 Appellant, Khristina Larison, brings this appeal challenging the Jefferson Circuit Court's order granting summary judgment to the Appellee, Home of the Innocents, her former employer. Following a careful review of the record and applicable law, we affirm.
I. BACKGROUND
The Home of the Innocents ("HOTI") employed Khristina Larison ("Ms. Larison") as a Certified Nursing Assistant beginning March 26, 2012. On August 5, 2014, Ms. Larison suffered a severe stroke that rendered her fully incapacitated for over four months and unable to fully speak for nearly a year after her separation from HOTI. In response, Ms. Larison's husband, Charles Larison ("Mr. Larison"), contacted HOTI and requested paperwork under the Family Medical Leave Act ("FMLA") on her behalf.[1] HOTI employee Karen Bender ("Ms. Bender") forwarded the FMLA paperwork to Mr. Larison on August 11, 2014. Two days later, on August 13, 2014, Mr. Larison emailed Ms. Bender requesting "discharge papers for resignation under medical[.]"
Hey Karen if you would just send me the discharge papers for resignation under medical and they will be sent back by tomorrow. Things aren't going good because from one day to another it is all different!! I need to find a therapist that is here but there aren't any from what I gather. I'm going to continue looking!! Thank you for helping and I'm sorry for the inconvenience!! Charles K. Larison Jr.
Ms. Bender responded that no paperwork was necessary and that she would process the "Separation due to Medical Reasons[.]"
Charles,
I'm sorry to hear that things aren't going smoothly. As far as the Separation due to Medical Reasons, there is really not any paperwork that I would need to send you ... I just need to complete the paperwork and send it upstairs. However, if you could e-mail me the request to be separated due to Khristina's current medical condition, then I could attach that to the paperwork and they would know the circumstances. Obviously, she would be marked eligible for rehire at the time she improves to the point that the doctor would release her, in writing, to do her job without restrictions. Thanks for keeping me informed. Please tell Kristina that we are thinking of her.
Karen
On August 22, 2014, Mr. Larison submitted the completed FMLA paperwork to Ms. Bender.
Hey I got the paper work filled out. The doctor said she is improving but it will be a slow process. So he does want her on FMLA and I will attach the documents that you need. Sorry it was so late I had to wait until the doctor could fill them out! Thanks again!!!
Charles K. Larison Jr.
Even though Mr. Larison never sent a follow-up email requesting resignation, as *40 requested by Ms. Bender, HOTI processed the resignation as having been requested by Ms. Larison on August 13, 2014. As such, by the time HOTI received the FMLA request papers, Ms. Larison's employment with HOTI had already been terminated. Ms. Larison alleges that this termination caused her to suffer financial ruin and emotional distress.
On October 27, 2014, Ms. Larison filed a civil complaint against HOTI in Jefferson Circuit Court. Ms. Larison alleged three state law claims against HOTI in her complaint: discriminatory and unlawful discharge on the basis of a disability or a perceived disability in violation of Kentucky Revised Statutes (KRS), Chapter 344.010 et. seq. (hereinafter KRS 344); failure to accommodate under KRS 344; and retaliation and unlawful discharge in violation of KRS 344.280.[2] After a discovery period, HOTI moved for summary judgment on all claims. The trial court granted HOTI's motion after finding that there were no genuine issues of material fact which would make it possible for Ms. Larison to prevail at trial. This appeal followed.
II. STANDARD OF REVIEW
"The circuit court's decision to grant summary judgment is reviewed de novo. " Harstad v. Whiteman , 338 S.W.3d 804, 809 (Ky. App. 2011) (citing Lewis v. B & R Corp. , 56 S.W.3d 432, 436 (Ky. App. 2001) ). "In reviewing a trial court's grant of a motion for summary judgment, we must ascertain 'whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law.' " Henninger v. Brewster , 357 S.W.3d 920, 924 (Ky. App. 2012) (quoting Scifres v. Kraft , 916 S.W.2d 779, 781 (Ky. App. 1996) ; CR 3 56.03). "All doubts are to be resolved in favor of the party opposing the motion [for summary judgment]." City of Florence v. Chipman , 38 S.W.3d 387, 390 (Ky. 2001). "The party opposing a properly presented summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing the existence of a genuine issue of material fact for trial." Id.
III. ANALYSIS
A. Disability Discrimination
KRS 344.040(1)(a) makes it "an unlawful practice for an employer: To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, ... because the person is a qualified individual with a disability."[4]
*41 In Williams v. Wal-Mart Stores, Inc. , 184 S.W.3d 492 (Ky. 2005), the Supreme Court of Kentucky noted that there are two methods to establish a claim for discrimination:
There are two paths for a plaintiff seeking to establish a[ ] ... discrimination case. One path consists of direct evidence of discriminatory animus. Absent direct evidence of discrimination, Plaintiff must satisfy the burden-shifting test of McDonnell Douglas Corp. v. Green , 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The reasoning behind the McDonnell Douglas burden shifting approach is to allow a victim of discrimination to establish a case through inferential and circumstantial proof.
Williams , 184 S.W.3d at 495-96. Here, given the absence of direct evidence of discrimination, we are dealing with the burden-shifting test, which means that Ms. Larison must establish a prima facie case of disability discrimination to shift the burden.
To establish a prima facie case of disability discrimination, Ms. Larison must show: (1) that she had a disability within the meaning of KRS 344.010(4) ; (2) that, despite the disability, she was otherwise qualified to perform the essential functions of the job in question, either with or without reasonable accommodation; (3) that she suffered an adverse employment action because of her disability; and (4) that she was replaced by a non-disabled person or that similarly situated non-disabled employees were treated more favorably. See, e.g. , Board of Regents of Northern Kentucky University v. Weickgenannt , 485 S.W.3d 299, 306 (Ky. 2016).
The circuit court began its analysis with the third prong. For consistency's sake, we will follow suit. According to the circuit court, there was no evidence of an adverse employment action by HOTI because Ms. Larison voluntarily resigned her position. We believe the circuit's court conclusion in this regard is rather one-sided, and fails to construe the facts in a light most favorable to Ms. Larison.
First, Ms. Larison never personally discussed anything with HOTI. All discussions during the pertinent timeframe took place between Mr. Larison and HOTI. The circuit court simply assumed that Mr. Larison had the authority to act on his wife's behalf. This was a flawed assumption. HOTI has not pointed to any action Ms. Larison took. It relies solely on the fact that Mr. Larison requested FMLA leave papers to support its contention that Mr. Larison had the authority to resign for his wife. This argument, however, does not hold water because Mr. Larison did not need Ms. Larison's authority to request FMLA for his wife. The applicable federal regulations cloaked him with that authority due to Ms. Larison's incapacitated state. See 29 C.F.R. § 825.301. We have not found any corresponding state law to suggest that Mr. Larison had actual, apparent, or implied authority to resign on his wife's behalf under these circumstances.
Nothing indicates that Mr. Larison had a power of attorney or that prior to her stroke Ms. Larison had done anything that HOTI could interpret as granting such authority to Mr. Larison under these circumstances. "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations. " Restatement (Third) of Agency § 2.03 (2006) (emphasis added). Ms. Larison was in coma at the time Mr. Larison allegedly resigned on her behalf. Therefore, unless Ms. Larison took some action *42 prior to her stroke, there can be no apparent authority.
HOTI pointed to no such affirmative action by Ms. Larison. The only action by Ms. Larison that it was able to identify is her act of marrying Mr. Larison several years prior to the stroke. This is an antiquated view of marriage that finds no support in the law of this Commonwealth. "[I]t is hornbook law that a spouse does not-by virtue of that status alone-possess actual authority to legally bind his or her spouse, and the record is devoid of any indication that [the wife] had either executed a power of attorney or, through her conduct with the defendants, created an appearance of authority in her husband." Lattanzio v. Ackerman , 682 F.Supp.2d 781, 787 n.2 (E.D. Ky. 2010) (citing Bennett v. Mack's Supermarkets, Inc. , 602 S.W.2d 143, 147 (Ky. 1979) ). "Marital relations do not create a presumption of agency between husband and wife when dealing with each other's property and such agency, when denied, must be proved the same as any other agency." Lazarus' Adm'x v. Hall , 287 Ky. 199, 152 S.W.2d 592, 595 (1941).
HOTI failed to provide any evidence that Ms. Larison or her authorized agent resigned her position. The circuit court erred when it concluded that Mr. Larison resigned on his wife's behalf. The parties' marital relationship did not vest Mr. Larison with the authority to act on his wife's behalf with respect to her individual employment status.[5] As such, the circuit court should not have rendered summary judgment to HOTI on the basis that Ms. Larison did not suffer an adverse employment action.
Our conclusion in this regard, however, does not end our inquiry. Even if we assume that Ms. Larison suffered an adverse employment action, she must still satisfy all of the remaining prongs. We now turn to the first prong, which requires a showing that Ms. Larison suffered from a disability within the meaning of KRS 344.010(4). This section defines a "disability," with respect to an individual as: "(a) A physical or mental impairment that substantially *43 limits one (1) or more of the major life activities of the individual; (b) A record of such an impairment; or (c) Being regarded as having such an impairment." Id.
On its face, it appears that Ms. Larison would easily satisfy this requirement as it is undisputed that her stroke substantially limited her ability to perform several major life activities such as talking, walking, reading, dressing herself, and the like. See Roush v. Weastec, Inc. , 96 F.3d 840, 844 (6th Cir. 1996) ; see also Sutton v. United Airlines, Inc. , 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (where a plaintiff's impairment substantially limited plaintiff's ability to work because plaintiff could not work in a broad class of jobs).
The analysis, however, is not so straightforward. Ms. Larison's complaint alleges only state law claims. She did not pursue any federal-law based claims under the Americans with Disabilities Act. Under Kentucky law temporary impairments do not qualify as disabilities. "Generally, short-term, temporary [impairments] are not substantially limiting." Roush , 96 F.3d at 843. It is undisputed that Ms. Larison has fully recovered from her stroke. However, the fact that Ms. Larison fully recovered does not mean, automatically, that her stroke was temporary. Ms. Larison made that statement in her affidavit more than two years after her stroke. Moreover, she was fully incapacitated for over four months after her stroke, and she was not able to fully speak for nearly a year. The specific question for this Court, therefore, is what constitutes a temporary impairment and what constitutes a long-term impairment.
"The Kentucky Civil Rights Act ["KCRA"] was modeled after federal law, and our courts have interpreted the Kentucky Act consistently therewith." Howard Baer, Inc. v. Schave , 127 S.W.3d 589, 591 (Ky. 2003) (citing Bank One, Kentucky N.A. v. Murphy , 52 S.W.3d 540, 544 (Ky. 2001) ). Kentucky courts, accordingly, have looked to both federal and state law for authority. See Jefferson County v. Zaring , 91 S.W.3d 583 (Ky. 2002) ; see also Kentucky Commission on Human Rights v. Commonwealth, Dept. of Justice , 586 S.W.2d 270 (Ky. App. 1979). Currently, when one claims that one is regarded as disabled, federal law defines temporariness as an impairment that has " 'an actual or expected duration of [six] months or less.' " See Azzam v. Baptist Healthcare Affiliates, Inc. , 855 F.Supp.2d 653, 661 (W.D. Ky. 2012) (quoting 42 U.S.C. § 12102(3)(B) ). However, when one claims, as is the case here, that one is actually disabled, temporariness is currently defined on an individualized basis:
The six-month "transitory" part of the "transitory and minor" exception to "regarded as" coverage ... does not apply to the definition of "disability" under [the "actual disability" prong].... The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.
29 C.F.R. § 1630.2(j)(ix) (emphasis added).
But no matter these current definitions, "the KCRA retains the former definition of disability[,]" prior to the 2008 Amendments of the federal law. Azzam , 855 F.Supp.2d at 658, n. 2 (emphasis in original). Under the former definition, courts generally ascribe to a strict interpretation of temporariness, thereby making most, if not all, temporary impairments insufficient impairments as a matter of law. See Spence v. Donahoe , 515 Fed.Appx. 561, 569 (6th Cir. 2013). "Lack of a permanent or long-term impairment is generally fatal to a claim of disability." Id. However, both state and federal statutes are and were silent on what duration of time constitutes *44 a long-term impairment versus a temporary impairment. Neither statute has or had, for instance, a six-month standard.
Instead, under the federal law's former definition, the duration of an impairment is just one of three factors to consider when determining if an impairment substantially limits a major life activity. 29 C.F.R. § 1630.2(j)(2) (effective until May 24, 2011).[6] The other two factors are "[t]he nature and severity of the impairment" and "[t]he permanent or long[-]term impact ... of or resulting from the impairment." Id. Consequently, given that duration of impairment is just one of three factors to consider, then lack of a long-term impairment is not necessarily fatal to a claim of disability. It is simply one factor that is not in the Ms. Larison's favor.
Here, the evidence indicates that Ms. Larison was fully incapacitated for over four months and unable to fully speak for almost a year after her stroke. Accordingly, the first factor-the nature and severity of her impairment-favors Ms. Larison. The second factor-the duration of her impairment-favors Ms. Larison. Because Ms. Larison not only was fully incapacitated for over four months but also was not able to work for nearly one year after her stroke, we believe that such a length of time goes beyond anything that should be considered temporary. Lastly, the third factor-the lack of permanent or long-term impact resulting from the impairment-favors HOTI because Ms. Larison was able to completely recover. Therefore, given that two of the three factors under the former, federal definition favor Ms. Larison, we hold that Ms. Larison was, in fact, disabled.
Although we hold that Ms. Larison was in fact disabled under Kentucky law, we still agree with the trial court that Ms. Larison's physical inability to work following her stroke does not allow her to recover under KRS 344.040(1) because Ms. Larison was not able to perform the essential functions of her employment position, with or without accommodation, after her stroke, which is the second prima facie element.[7] Given that Ms. Larison was not able to work as a Certified Nursing Assistant for nearly one year after her separation from HOTI, and given that she cannot point to any evidence that shows she would have been able to work the *45 required four shifts in a given month as required by her Certified Nursing Assistant position,[8] Ms. Larison cannot prove that she would have been able to perform the essential functions of her employment position, with or without accommodation. Just like the plaintiff in Wymer v. JH Properties, Inc. , 50 S.W.3d 195 (Ky. 2001), whose injury prohibited her from performing the essential functions of her at-will employment, Ms. Larison "cannot validly claim that she was discriminated against due to her disability...." Wymer , 50 S.W.3d at 199. Ms. Larison offers no proof that she would have been able to perform her job duties.
Moreover, Ms. Larison has offered no proof that she was replaced by a non-disabled person or that similarly situated non-disabled employees were treated more favorably, which is the fourth prima facie element.
Therefore, we ultimately agree with the trial court: Ms. Larison cannot recover under KRS 344.040(1) because under these facts it would impossible for Ms. Larison to make out a prima facie case for disability discrimination.
B. Failure to Accommodate
To establish a prima facie case of HOTI's failure to accommodate, Ms. Larison must show: (1) that she had a disability within the meaning of KRS 344.010(4) ; (2) that, despite the disability, she was otherwise qualified to perform the essential functions of the job in question, either with or without reasonable accommodation; (3) that HOTI knew or had reason to know about her disability; (4) that she requested an accommodation; and (5) that HOTI failed to provide the necessary accommodation. See Brown v. Humana Insurance Co. , 942 F.Supp.2d 723, 731 (W.D. Ky. 2013).
The case law is fairly clear that a request for medical leave can qualify as a request for a reasonable accommodation under certain circumstances. However, there are limitations on the bounds of reasonableness when evaluating such requests under the ADA (or Kentucky's state discrimination statute).
The first limit is clear: The employee must provide the employer an estimated date when she can resume her essential duties.... The second is durational. A leave request must assure an employer that an employee can perform the essential functions of her position in the near future.
Robert v. Board of County Comm'rs of Brown County, Kans. , 691 F.3d 1211, 1218 (10th Cir. 2012). Ms. Larison's request does not satisfy either requirement. FMLA leave lasts for only twelve weeks. Ms. Larison's treating physician noted that she would be incapacitated continuously from August 5, 2014, through December 31, 2014, a period of twenty-one weeks and one day. Therefore, even if one were to assume that a request for FMLA leave was a request for a reasonable accommodation, Ms. Larison still would not have been able to perform the essential functions of her job even with the requested accommodation. Additionally, at the time the leave was requested, neither Ms. Larison nor her physician informed HOTI when, or even if, Ms. Larison would be *46 able to return to her position. On the Application for Leave that was submitted to HOTI, a handwritten question mark was placed on the blank for "estimated return date." The leave request in combination with Mr. Larison's communications gave the clear impression to HOTI that it was entirely possible that Ms. Larison would never be able to return work.
Ms. Larison made a request for leave. However, in this case, that request cannot be treated as a request for a reasonable accommodation; the request was neither definite as to a return date nor provided any assurance that Ms. Larison would be able to perform the essential functions of her job in the near future. See Maat v. County of Ottawa, Michigan , 657 Fed.Appx. 404, 413 (6th Cir. 2016) ("Because Maat's requested leave was not definite in duration, it could not have been a reasonable accommodation under the law of this circuit."). Accordingly, Ms. Larison's claim that HOTI denied her a reasonable accommodation when it rejected her FMLA request for leave fails as a matter of law.
Here, we diverge briefly, to point out that it is vitally important to recognize that the FMLA is distinct from the ADA (and its Kentucky state counterpart). See Hoge v. Honda of America Mfg., Inc. , 384 F.3d 238, 243 (6th Cir. 2004). The FMLA entitles an eligible employee to as many as twelve weeks of leave during any twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).[9] The Sixth Circuit has recognized two distinct theories of recovery under the FMLA: "(1) the so-called "interference" or "entitlement" theory arising from § 2615(a)(1), and (2) the "retaliation" or "discrimination" theory arising from § 2615(a)(2)." Seeger v. Cincinnati Bell Telephone Co., LLC , 681 F.3d 274, 282 (6th Cir. 2012). "The interference theory has its roots in the FMLA's creation of substantive rights, and if an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred, regardless of the intent of the employer." Id. (internal quotations omitted). The retaliation theory prohibits an employer from using the taking of FMLA leave as a negative factor in employment actions. Hunter v. Valley View Local Schools , 579 F.3d 688, 690 (6th Cir. 2009). A plaintiff who prevails under either theory may receive a wide array of damages. See 29 C.F.R. § 825.400(a)(c).
We include this discussion to point out that there are important differences between the rights an employee has under the ADA and the FMLA. One of the important differences between the FMLA and the ADA, at least as it pertains to this case, is that FMLA leave is not preconditioned on the employee being able to provide an estimated return date, or even an assurance that the employee will be able to return to work when the FMLA leave period expires. If the employee otherwise qualifies for FMLA leave, the employer is obligated to provide it irrespective of the employee's ability to return to work at a later date. However, an employee who remains "unable to perform an essential *47 function of the position" once her FMLA leave ends is not entitled to restoration or another position. 29 C.F.R. § 825.216(c).
While Ms. Larison claims that HOTI unlawfully denied her request for FMLA leave, she pursued her claims exclusively under Kentucky's Civil Rights Act. For the reasons discussed above, HOTI was entitled to summary judgment on those claims. Nothing in this opinion should be construed as holding that Ms. Larison was not entitled to FMLA leave or that HOTI's actions were lawful under the FMLA. Simply put, we have not undertaken an FMLA-specific analysis because Ms. Larison did not bring a separate FLMA claim, and we offer no opinion on the ultimate viability of such a claim had it been brought.
IV. CONCLUSION
In conclusion, we hold that the trial court did not err in finding that there were no genuine issues of material fact in dispute and that HOTI was entitled to summary judgment as a matter of law. Therefore, for these reasons, we affirm the Jefferson Circuit Court.
ALL CONCUR.

The Department of Labor's regulations make clear that Mr. Larison had the authority to make this request on his wife's behalf. See 29 C.F.R. § 825.301 ("The employer's decision to designate leave as FMLA-qualifying must be based only on information received from the employee or the employee's spokesperson (e.g., if the employee is incapacitated, the employee's spouse, adult child, parent, doctor, etc., may provide notice to the employer of the need to take FMLA leave).").

Ms. Larison did not address her claim of retaliation in her brief on appeal and, consequently, neither did HOTI; therefore, we address only her disability discrimination and failure to accommodate claims below.

KRS 207.150(1), part of Kentucky's Equal Opportunities Act, also concerns employment practices as they relate to physical disabilities. Specifically, it provides that: "No employer shall fail or refuse to hire, discharge, or discriminate against any individual with a disability with respect to wages, rates of pay, hours, or other terms and conditions of employment because of the person's physical disability unless the disability restricts that individual's ability to engage in the particular job or occupation for which he or she is eligible ..." KRS 207.150(1). This statute is distinct from other state and federal law anti-discrimination statutes. See Reid v. Contel Cellular of Louisville, Inc. , 96 F.3d 1448 (6th Cir. 1996). Because Ms. Larison did not pursue a claim under this the Kentucky Equal Opportunity Act, we have not undertaken a review to determine whether such a claim would have been viable.

Even if one assumed that Mr. Larison had the authority to act on Ms. Larison's behalf, we do not believe the facts irrefutably established that Mr. Larison actually submitted a resignation for Ms. Larison prior to returning the FMLA request papers. The only evidence HOTI put forth to support a voluntary resignation by Ms. Larison was Mr. Larison's August 13, 2014, email to Ms. Bender. In that email, Mr. Larison requested that HOTI provide him with the paperwork necessary to submit "discharge papers for resignation under medical[.]" Certainly, a jury might conclude that this was simply a request for paperwork, not an actual resignation. In any event, Ms. Bender responded that there was no official paperwork that Mr. Larison needed to fill out. However, she requested him to e-mail her a written "request to be separated due to Khristina's current medical condition[.]" She indicated that she would then attach that email to the paperwork she had to fill out and send it "upstairs" so they would know the circumstances. When viewed in a light most favorable to Ms. Larison, Ms. Bender's email response suggests that Mr. Larison needed to send an additional, written request for resignation before the paperwork would be processed. Mr. Larison never sent the follow-up email Ms. Bender requested. Instead, a few days later, Mr. Larison submitted a FMLA request to HOTI, only to discover that Ms. Larison's employment had already been terminated. When viewed in a light most favorable to Ms. Larison, it is entirely possible to conclude that Ms. Larison never voluntarily completed the resignation process. A jury could certainly conclude that Mr. Larison simply intended to request paperwork to review when he emailed Ms. Bender on August 13th, and when he did not provide the follow-up email she requested by the next day, he had decided not to submit a resignation on his wife's behalf. Likewise, a jury could reasonably conclude that Ms. Bender should have been on notice that the Larisons had changed course when she did not receive a follow-up email from Mr. Larison.

The text of the statute is as follows:
The following factors should be considered in determining whether an individual is substantially limited in a major life activity:
(i) The nature and severity of the impairment;
(ii) The duration or expected duration of the impairment; and
(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.
29 C.F.R. § 1630.2(j)(2) (effective until May 24, 2011).

KRS 344.030 provides:
"Qualified individual with a disability" means an individual with a disability as defined in KRS 344.010 who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's disability without undue hardship on the conduct of the employers' business.
KRS 344.030 also provides:
"Reasonable accommodation" means making existing facilities used by employees readily accessible to and usable by individuals with disabilities, job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

"[I]n an accommodation case it [is the plaintiff's] burden to 'propos[e] an accommodation and show[ ] that that accommodation is objectively reasonable ... in the sense both of efficacious and of proportional to costs.' " Brumfield v. City of Grayson , 2006 WL 504979, at *3 (Ky. App. March 3, 2006) (citing Monette v. Electronic Data Systems Corporation , 90 F.3d 1173, 1183 (6th Cir. 1996) ; Noel v. Elk Brand Manufacturing Company , 53 S.W.3d 95 (Ky. App. 2000) ).

The statute defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." Id. at § 2611(11). The leave guaranteed under the FMLA does not have to be paid. However, if an employee is provided group health insurance, the employee is entitled to the continuation of the group health insurance coverage during FMLA leave on the same terms as if he or she had continued to work.