Opinion op the Court.
THIS was a bill filed by Cannady against Stark, to coerce a conveyance of 108 acres of land in Bourbon county, 50 acres of which he claimed under a bond executed by Stark to Kirthly, assigned by him to Creelc, and bythe latter to Cannady, and four acres by purchase from Stark himself; but as to these 54 acres, the controversy was adjusted between the parties, during the progress of the cause, and need not be further noticed. With respect to the remaining 54 acres, Cannady alleges that on the 11th of July 1794, he advanced to Stark $60, with which he was to purchase for Carina-dy, land, upon as good terms, and as convenient to Can-nady, as he could; and he exhibits a written receipt of that import, signed by Stark. He charges, that Stark purchased of Pickett, in Virginia, whither he was then *400 about going with that view, 300 acres, part of a 5,000 acre tract lying near to where they lived, at the price of £100, and paid to Pickett the .$*60 which he had advanced, in part of the price; that shortly afterwards. Stark had the 300 acres surveyed, and laid off for him, as part of the purchase, 54 acres; that an agreement was made between them, whereby he agreed to let Stark have these 54 acres, for another tiact of 54 acres adjoining the land on which he lived, and that Stark accordingly laid off to him other 54 acres, the possession of which he has had ever since; but that Stark, not long after this agreement to exchange began, showed a disposition to dispute Cannady’s right, unless he would contribute his proportion of the expences which Stark had laid out in relation to the title, and that they at length agreed to submit the controversy to arbitrators, who awarded that Stark should convey the land, and that Cannady should pay his proportion of those ex-pences; and he alleges that Stark owed him, on other accounts, a sum equal to his part of the expences, and agreed to settle it in that way; biit that he has since refused to do so, and has brought suit and recovered judgment in ejectment against his tenants on the laird. He prays for a conveyance of the land, and if that cannot he obtained, compensation for his improvements, and for general relief.
Stark, in his answer, admits that when he was about going to Virginia, to purchase the land of Pickett, Can-* nady furnished him $60, for which he was to have a part of the land; and that he made the purchase of 300 acres, and on his return had the same surveyed, and laid off for Cannady 54 acres; but he does not admit that any part of the money advanced by Cannady was paid for said land; and he alleges that in addition to the hundred pounds, he was to render other services for Pickett in relation to the title of the 5,000 acre tract, as a consideration of the 300 acres, and that he never agreed to convey to Cannady the land laid off for him, unless he would contribute his proportion of the charges and expences incurred in relation to the 5,000 acre tract, which Cannady always refused to do. This he avers gave rise to the controversy, which was verbally referred to arbitrators, with whose award he was willing to comply, and insists upon Cantiady’s failing to do so. He answers evasively as to the agreement to ex *401 ■change; alleges that the reference and award were in delation to the land purchased from Pickett, and that the land claimed by Cannady under the exchange, was not within the 300 acres so purchased. He admits that Cannady has had possession of it; but alleges that it was only recently before the commencement of this suit, that he obtained the legal title, and insinuates that for want of the legal title he could nof sooner, have 'evicted Cannady. He insists that Cannady, by.his refusal to pay him for the expences and trouble incurred in relation to Pickett’s claim, has forfeited all right to the land; and he pleads and relies upon the statute of limitations, and the statute against frauds and perjuries, in bar of the relief sought by Cannady.
The circuit court disregarded the agreement to exchange, and the submission to arbitrators, as being merely verbal, and not such as could be enforced under the statute against frauds and perjuries; but was of opinion that the agreement of Stark to purchase for Cannady, was binding, and that Cannady was entitled to the same proportion of 300 acres, as $60 bears to the whole price paid by Stark'; and that the price consisted of the £100 and all the expences and trouble incurred by Stark relative to the title of Pickett’s claim, over and above the .£ 100 which Pickett, by the agreement with Stark, was to have paid towards that object; and for the purpose of ascertaining the amount of those expences, and the compensation for Stark’s trouble, and of laying off Cannady’s proportion of the'300 acres accordingly, commissioners were appointed, who were moreover directed to assess the value of the improvements and the amount of rents, of the part allotted to Cannady, and make report.
In this state of things, Stark died; and the suit being revived against his heirs and administrator, the commissioners made a report, by which it appeared that they had laid off for Cannady 38 acres and 29 poles, as his proportion, and that there was a balance of rents in his favor against Stark, of $399 10, and the court pronounced a final decree accordingly, from which Stark’s heirs and administrator have appealed to this court.'
It is very evident, that the statute of limitations is no bar to the relief sought by Cannady; for time never runs against one in possession. And besides, Stark, as he admits, did not obtain the legal title until shortly be *402 fore íbe insUluUon of this suit; and until he had obtained tiie title, Cannady’s cause of action against him was incomplete.
A verbal sale ofknds is within the * statute of •sa^aroísub-■misión to arbitrators, of controveraes tbeütle to land.
Our statute-SÍ forbids the •enforcement by suit, or ei'uíües^crc-ated by 'verbal contracts, as result from the nature of the transac-tionbynnpli-ca ion0 aw.
1. There is, however, no doubt, that the statute against. and perjuries precludes the court from giving' re^'lcfnPon R*e agreement to exchange lands, as well as upon the award of the arbitrators; for the agreement to exchange, and the agreement of submission to the. ar'>*trators, were both verbal, and cannot, under the statute, be enforced. But the same thing cannot bo predicated of the original agreement by Stark, to pur-cbase land for Cannady.
2. Though Stark docs not admit the fact, yet it is satisfactorily proved, that he paid towards the price of the 300 acres, the $00 advanced by Cannady; and it may well be doubted, whether, from this circumstance ^01™, an equity would not have resulted to Cannady by implication of law; for we apprehend where an agent verbally employed to purchase land for his principal, d°es so with tiie money of his principal, but makes the contract in his own name, that a trust for the principal will result by implication, which is not affected by the sía(uí:c ngainst frauds and perjuries; for the statute on-. ly forbids the enforcement of a trust or equity created by contract, and not such as results from the nature of y3e transaction by implication of law, But whatever raay be the, rule in a case of that kind, there can, we think, be no doubt, in one like the present, where the party, by a writing signed by himself, acknowledges the receipt of the money, and binds himself to make the purchase, which he accordingly does, with the money which he received for the purpose. We concur, therefore, with the circuit court, in the opinion that the original contract by Stark, to purchase for Cannady, is not within the statute against frauds and perjuries, and that Cannady is entitled to a decree for part of the 300 acres purchased of Pickett; hor is there any doubt, but 1.ha.t the part which should he decreed to him, should bear the same proportion to the 300 acres, as $60 bears to the whole consideration paid therefor by Stark. By the written agreement between Stark and Pickett, filed in the cause, it appears, that in addition to the £! 00, Stark agreed to have a general plat of the whole 5,000 acre tract, with the interfering claims, made out, as a consideration of the 300 acres, Pickett agreeing to *403 pay the sum of $4 towards the expence of surveying. In fixing the consideration of the 300 acres, the trouble and expence of making ou't such general plat should be ascertained, and that sum, when ascertained, with a deduction of £4, should be added to the £100, as making the entire consideration of the 300 acres, and Cannady’s part proportioned accordingly* But the circuit court seems to have required the commissioners to also take into thejsslimate Stark’s services in other respects in relation toohe title, and other expences incurred by him infixing the consideration of the- 300.acres; and the commissioners have in fact done so in their report, and thus diminished the'quantity of land to which Cannady was entitled, below what it ought tobe.- Cannady ought,doubt, to contribute his due proportion of the expences of tlie suit brought by Stark against Pickett's fieirs, to obtain the legal title of the 300 acres, if, on account of their not being within the state, the costs could not be made of them, as Stark alleges. But these -ex-pellees ought not to be taken as a part of the consideration of the 300 acres; nor ought Cannady to be charged with, or made liable to any other expences, or for the personal services of Stark in other respects, as he has been'by the report of the commissioners. In these respects, the decree of the circuit court is more preju-. dicial -to-Cannady, than it ought to have-been; but Stark’s representatives cannot, for that, complain. They have, however, just cause to complain of the decree as it relates to the rents; for there is no principle upon which they ought to be made to account for the rents of that part of the 300 acres decreed to Cannady, as the circuit court has, done, without making him account for the rents of the lands which he has had the possession of, as an equivalent thereior, under the verbal contract to exchange..
Where the contracting parties have each occupied the lands agreed to be exchanged under a parol contract for exchange, neither can1 recover rente of the other; but, In such case, an estimate ought to be taken (on a decree declaring such parol exchange void) of the lasting improvements made by each par-
3. We are inclined to thin]?, however, that as each was permitted by the other to enjoy as bis own, the land be possessed under the contract for the exchange, be ought not to be accountable to the other for the profits he has received. But the improvements«on the respective parcels of land may he of unequal value; and in proportion as this may be the case, the one will be ben-efiltedto the prejudice of the other, unless he who receives the parcel in the greatest degree enhanced in value by the labor of the other, is made to account to *404 bjm for tho difference. An estimate, therefore, of the, value of the improvements made by the parties respectively upon the land in bis possession, and which is to be restored to the other, ought to be taken by commissioners; and in doing this, the improvements ought to estimated in their deteriorated state, and in propor-lion as the Value of the land is thereby enhanced, and the balance should be decreed to the party in whose {&vor i(; sha11 be found*
ty; but in terioratedde" concüüon, and in pro-?aíueofThe10 land is en-hanccdby halancenda struck.
The decree of the circuit court must be reversed with costs, arid the cause be remanded, that a decree may ©nl-ered not inconsistent with the foregoing opinion, and such other decrees and orders as may he agreeable to equity.