## Rice and Hutchins' Cincinnati Company v. J. W. Croghan & Company.

(Decided April 12, 1916.)

### Appeal from Fayette Circuit Court.

1. Principal and Agent—Burden of Proof.—The burden of proving an agency rests upon the one who asserts it, if it is denied.

2. Principal and Agent—Declarations and Acts of Agent.—Neither an agency nor the scope of it can be established by proof of the declarations of one claiming to be an agent.

3. Principal and Agent—Evidence of Agency.—The agent is a competent witness to prove his agency, or the existence of facts from which an agency may be inferred.

4. Principal and Agent—Evidence of Agency—Competency.—Any evidence which is otherwise competent, which has a tendency to prove or disprove agency or the authority of an agent, is admissible, whether the evidence of the appointment be direct or indirect.

WILLIAMSON & ADAMS for appellant.

J. A. EDGE for appellee.

OPINION OF THE COURT BY JUDGE HURT.—Affirming.

Previous to February 6, 1913, J. W. Croghan, James Redfern, and Mrs. Lucy Elkins were partners, conducting the business of merchants in Lexington, Kentucky, under the style of J. W. Croghan & Co. At this time the partner-

ship owed debts to various persons, aggregating the sum of about $4,500.00. Among its creditors was the appellant in this case, to whom it owed something over the sum of $900.00, but its largest creditor was Brandt & Lear, of Cincinnati, Ohio, which was the same place at which the appellant was engaged in business. Another creditor of the partnership was the Mantz Manufacturing Co., of Cincinnati, Ohio. Dissensions grew up between the partners, which rendered it impracticable to longer continue the partnership, and resulted in a suit between the partners, in which one or the other sought the appointment of a receiver for the business and assets of the partnership and a closing out of its business by the receiver. J. W. Croghan called up the firm of Brandt & Lear by telephone and informed it of the trouble in which the partnership was involved, and requested the firm of Brandt & Lear to send a representative to Lexington to assist in making some arrangements by which J. W. Croghan & Co., might continue in business and to make some adjustment of the matters in dispute between the partners.

The appellant had in its employ a traveling salesman, whose name was Schwenbeck, who had been accustomed for several years to solicit trade for the appellant and to sell its goods in the territory in which Lexington is situated, and he had, on numerous occasions, made sales of goods for the appellant to J. W. Croghan & Co., and had received payment from them for purchases of goods which he had sold them. Schwenbeck was in Lexington on the 5th day of February, 1913, and called upon J. W. Croghan & Co., where he received information of the trouble in which the partnership was involved, and it occurring to him that the appellant ought to have notice of the condition of affairs, called up appellant by telephone and informed it of the troubles of J. W. Croghan & Co., and inquired what he should do about it. He was informed by appellant that it would advise him as to his course by telegram, letter or otherwise. George Lear, of the firm of Brandt & Lear, when he received information as to the trouble in which J. W. Croghan & Co. were involved, and the request to come to Lexington to assist in adjusting its affairs more satisfactorily, interviewed the appellant in regard to the matter by telephone. On the 6th of February, Lear came from Cincinnati to Lexington, and on the morning of the same day Schwenbeck received

a telegram from the appellant, directing him to call at the hotel and to see Lear. Schwenbeck went immediately to the hotel, where he found Lear, who was expecting him, and after they conferred as to what steps should be taken, they proceeded to have a conference with J. W. Croghan. When Schwenbeck met Lear at the hotel, Lear informed him that he was authorized to act for his own firm of Brandt & Lear and appellant and the Mantz Manufacturing Co. After their conference with J. W. Croghan, they met representatives of Redfern and Mrs. Lucy Elkins, when the following arrangements were agreed upon.

Mrs. Elkins agreed to purchase Redfern's interest in the partnership, and to execute to him a note for $2,650.00, and to pay to him at least $12.50 per week until the debt should be satisfied, and to release him from any obligation to pay any part of the debts of the partnership, by assuming the payment of them herself and to secure the note which she gave him for his interest in the business by a mortgage upon all the assets and effects then in the hands of the partnership or thereafter to be acquired by it.

This agreement was reduced to writing and signed by Redfern and Mrs. Elkins; and J. W. Croghan gave his consent to the arrangement in writing, which he signed, and at the same time another writing was prepared, by which Brandt & Lear, and appellant agreed to release Redfern from any obligation to pay any portion of the debts which they held against the partnership and to hold him harmless against any attack which might be made by any existing creditor upon the mortgage which Mrs. Elkins was to execute to Redfern, and further agreed to the execution of the mortgage to Redfern by Mrs. Elkins to secure the amount which she had agreed to pay him for his interest in the partnership and its assets. This writing was signed by Brandt & Lear, per George Lear, and the name of appellant was subscribed thereto by Schwenbeck. The appellees J. W. Croghan and Mrs. Elkins also claim that at the same time the transactions, above stated, were had, that in consideration of the agreement by Croghan and Mrs. Elkins to release Redfern from any obligation to pay any part of the debts of the partnership, and to assume their payment themselves and the purchase of Redfern's interest by Mrs. Elkins, and the execution of the mortgage to him and

the payment to him of $2,650.00 for his interest in the partnership, at the rate of $12.50 or more per week, and the further agreement on the part of Croghan and Mrs. Elkins to pay the debts to the various creditors of the firm, other than Redfern, at the rate of $150.00 or $200.00 per week, that the appellant and Brandt & Lear agreed to not require the payment of the indebtedness owing to them until after the indebtedness to the other creditors of the firm and that due to Redfern should be paid. This alleged agreement was not reduced to writing, and the making of it is denied by the appellant.

In a short time after these arrangements had been effected, the appellant filed a suit against Redfern, Croghan, and Mrs. Elkins, seeking to recover of them the debt which the firm of J. W. Croghan & Co. owed it. Redfern filed an answer, in which he relied upon the agreements above stated as a defense and Croghan and Mrs. Elkins answered, setting up the transactions above stated, and as a defense plead that the debt of appellant was not due, because of the agreement which it had made to postpone the collection of its debt until after the other indebtedness of the partnership had been satisfied. The appellant, by reply, denied the making of any agreement with either Redfern or either of appellees, as alleged by them, and denied the authority of Schwenbeck to make any agreement for it. The case came on for trial in March, 1914, but before this time the appellant dismissed its action against Redfern and proceeded against Croghan and Mrs. Elkins alone. The appellees admitted owing the debt sued for to the appellant, and the only defense was that the debt was not due, as under the terms of the alleged agreement, which they had with appellant, the debt was not yet due. The trial resulted in a verdict of the jury and a judgment of the court in favor of appellees. The court, upon the trial held that the burden of proof was upon the appellees, and at the conclusion of the testimony offered by them, the appellant moved the court to direct the jury to return a verdict in its behalf, and at the conclusion of all the evidence renewed its motion to that effect, but the motions were overruled by the court, to which the appellant excepted.

The grounds relied upon by appellant for reversal of the judgment are, that the court erred in the admission of incompetent testimony prejudicial to it, and in overruling its motion for a direct verdict in its behalf.

It is insisted for appellant that there is no evidence conducing to show that Schwenbeck or Lear had authority from appellant to make the agreements relied upon by appellees as a defense.

The evidence does not admit of any doubt, that the appellees, in entering into the arrangements, by which the interest of Redfern was purchased, and they assumed the burden of all the indebtedness of the partnership, acted in perfect good faith, and with full reliance upon the authority of Lear and Schwenbeck to make the agreement for their principals and to bind them, since, at the time of the trial, they had paid Redfern about one-half of the debt owing to him, and had paid all of the other creditors, except Brandt & Lear and appellant, the entire amounts owing to them, and which amounted to the sum of about $3,000.00, and had paid to appellant and Brandt & Lear, each, the sum of $250.00 upon the debts owing to them. It can not be contended that Schwenbeck, as a mere traveling salesman, with authority to solicit orders for the sale of goods from customers, and which orders the appellant might approve or disapprove, had any authority to make for appellant the contract relied upon by appellees. It was necessary that he should have special authority from appellant before it could be bound by a contract entered into by him for appellant to postpone the collection of its debts, until the other creditors should be paid. It is, also true, as insisted by appellant, that the authority of an agent nor the scope of his agency, can be established by the mere declarations of the agent, as to his authority or the extent of it. Huffcut on Agency, Sec. 137; B. & O. S. W. R. R. Co. v. Clift, 142 Ky. 575; Peyton v. Woolen Mills Co., 122 Ky. 361; L. & N. R. R. Co. v. Byrley, 152 Ky. 35; White Plains Coal Co. v. Teague, 163 Ky. 110; Edmiston v. Hurley, 99 S. W. 259; Dieckman v. Weirick, 73 S. W. 1119. The agent, however, is a competent witness to prove his agency, or to prove the existence of facts from which his agency can be inferred. In 31 Cyc. 1650, it is said:

"The testimony of the agent is competent to establish the fact of his agency, at least where the authority was verbally conferred; and to refuse to allow him to testify and be cross-examined is reversible error. It is held, likewise, that the testimony of the alleged agent is competent to negative the existence of the agency."

This doctrine is upheld in Peyton v. Old Woolen Mills Co., *supra,* and in Bruen v. Grahn, 5 R. 312. In 2 C. J. Sec. 689, it is said:

"The rule that the declarations of an agent are, as against his principal, inadmissible to prove the fact of his agency does not apply to his testimony as a witness on a trial in which such fact is in issue, and consequently the testimony of an agent, unless he is disqualified for some other reason, is competent to establish the fact of his agency, and the existence of facts from which the agency may be inferred, at least where the authority was verbally conferred.  *  *  *"

Hence, the testimony of the alleged agent, Schwenbeck, was properly admitted by the trial court, in proof of the existence of facts from which his agency could be inferred. It is true, there was no direct proof of the agency of Schwenbeck, in the case at bar, but agency is a fact, and can be proven in any way by which any other fact may be proven and "any evidence which is otherwise competent that has a tendency to prove or disprove agency or the authority of an agent is admissible, even though it is not full and satisfactory, as it is the province of the jury to pass upon it, and it follows from the several ways in which an agency may be created, that the evidence of the appointment may be either direct or indirect." 2 C. J. Sec. 688.

It was proven by Humphreys, an officer of appellant, that Lear conferred with him in regard to the affairs of J. W. Croghan & Co. as soon as Croghan had informed Lear of the troubles of the partnership, and requested him to come to Lexington. It was proven by Schwenbeck, that on February 5th when he learned of the embarrass-ment of Croghan & Co., that he, at once, conferred with appellant and requested to be advised what to do in the premises, and appellant informed him that it would advise him by telegram, letter or otherwise. Lear came to Lexington on the day following, and Schwenbeck received a telegram from appellant directing him to go to the Phoenix Hotel and see Lear. Lear was there and looking for him. He asked Lear what appellant said about it, and Lear informed him that he had authority to act for appellant, and directed Schwenbeck to enter into the arrangements for appellant, which were consummated on that day with the partners of J. W. Croghan &

Co. The fact that Lear was expecting Schwenbeck shows, beyond dispute, that he had previous information that Schwenbeck would call upon him, and the fact that Schwenbeck had requested directions from appellant in regard to the matters, and had been informed that appellant would advise him, and then directed him to go and meet Lear at the hotel, is evidence tending strongly to prove that appellant sent the message to Schwenbeck by Lear which it had promised Schwenbeck, and which invested him with authority as its agent to act for it in the premises and it was communicated to him by Lear. Although Lear was a resident of Cincinnati, the appellant does not offer his evidence to prove that it did not confer authority upon Schwenbeck, through Lear, to make the contract with appellees. That Schwenbeck, who was a trusted employee of appellant, concluded from all the circumstances that he had authority to make the contract, there is no doubt. Humphreys testified, it is true, that it did not give authority to Lear, nor to Schwenbeck, to make the contract relied upon by appellees, but only agreed to assist in investigating the condition of Croghan & Co.; he fails to explain why he directed Schwenbeck to go to Lear for directions, or to explain what investigations were necessary, or what he hoped from any investigations. Without reciting all the facts in evidence, in addition to the ones enumerated, which tend to prove the agency of Schwenbeck, the evidence was such, in our opinion, as to justify the submission to the jury of the question as to whether or not appellant had authorized Schwenbeck to make the contract relied upon for it. The evidence was such that an agency such as is contended for could be inferred from it. The issue was submitted by instructions, of which there is no complaint, to the jury, which found from all the facts and circumstances in evidence that the agency was created by appellant, and that the making of the contract was within the scope of the authority conferred. The evidence is sufficient to support the verdict.

Hence the judgment is affirmed.