## Duff, et al. v. Turner, et al.

(Decided November 13, 1923.)

### Appeal from Breathitt Circuit Court.

Frauds, Statute of—Agreement Between Adjoining Owners as to Possessory Title to Strip Beyond Real Boundary Held Within Statute.—Where there was no bona fide dispute as to location of the real boundary, and the only dispute was as to whether one of the adjoining owners had obtained title to a strip beyond such boundary by adverse possession, an agreement between the adjoining

owners as to the alleged possessory line constituted a parol surrender of the disputed lands, and was therefore within the statute.

T. T. COPE and A. H. PATTON for appellants.

W. L. KASH and O. H. POLLARD for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Appellees sued at law to recover the value of timber cut from the land in controversy, and in a separate suit in equity sought an injunction to prevent further trespasses. The two suits were consolidated and the issues as to title and damages were submitted to a jury, who found in their favor.

Appellees trace their title to a patent issued to Alfred Marcum on the 1st day of March, 1875, for 174 acres, excluding therefrom two separate surveys of 50 acres each, theretofore patented in the name of Isaac Strong on the 24th day of July, 1843, and the 7th day of June, 1844, respectively.

The defendant traces his title to the patent of 1843. It is conceded that the legal title is good in both. The two fifty-acre patents are almost entirely within the 174-acre patent, the northern line of the two being practically continuous. The second forms practically a rectangle, its eastern boundary being a single straight line. This forms the western line of the first for about 22 poles. The calls of the first are: Thence E. 26 poles; S. 57 E. 8 poles; S. 5 E. 50 poles; thence an easterly course for about 30 or 35 poles, and thence south. This leaves between the two patents a strip of land something like 30 poles in width and 50 poles or 60 poles in length, which is admittedly included in the Marcum patent and excluded from the other two, and forms the bulk of the disputed land. There is another small parcel in dispute lying to the east of the last named patent and opposite the one first described.

Appellant admits that the calls of his deed are identical with that of the patent, but denies knowledge of their location; he insists that there was a well marked boundary, known as the "Deaton boundary," which followed the eastern line of the second patent to a point near the southeast corner, then turned to the east to a buckeye, and then east to the top of a ridge giving other calls to

the beginning. This boundary would include the lands in controversy, and he claims it was held adversely by him. It appears that he did not erect any improvements or enclosures beyond the patent lines and that his possession was manifested only by cutting timber and mining coal. However, that issue was submitted to the jury and no complaint is made of it.

The only ground relied on for a reversal is the refusal of the trial court to instruct the jury as to the effect of an alleged agreement between appellant and J. B. Marcum, appellee's ancestor, to establish a conditional or compromise line.

The evidence as to this is that in 1899 Henry Strong owned an interest in the second patent; he had been cutting timber over its southern boundary, as claimed by Marcum, and the latter brought suit to attach the logs. Strong, together with appellant Duff at Marcum's request went to see him about it, and a compromise was agreed upon by them. Marcum surrendered the timber and a division line was established at the point claimed by him. This was reduced to writing and signed by the parties.

Strong states that his sons had cut some timber on the disputed land claimed by Duff and this at Duff's direction; that no suit had been brought as to it, but that in the same conversation Duff and Marcum also agreed on a division line; that Marcum said he was not claiming anything in the "Deaton" boundary, and that he was willing for the line to be established as claimed by Duff; for him to take the logs and raft them, and this was agreed to between them though not reduced to writing. Anse White, who was present, substantially corroborates the latter part of this statement. Both say there was no dispute and no controversy; neither testify as to any claim upon the part of Marcum based on his own line, or as to any concession on the part of Duff. Marcum as master commissioner had conveyed Duff the tract of land in question and is shown to have been perfectly familiar with the lines of both patents and must have known that the disputed land was excluded from the Duff deed and included in his. Further it does not appear that the patent lines were hard to locate or that Duff attempted to locate them. Hence there could have been no *bona fide* dispute as to their location, and the only dispute that

could have arisen was as to the location or existence of Duff's alleged possessory line. Under such circumstances the alleged agreement would not have been the establishment of a disputed line but a parol surrender by Marcum of the disputed lands, and therefore within the statute of frauds. Hoskins v. Morgan, 197 Ky. 737; Amburgy v. Burt & Brabb Lumber Co., 121 Ky. 580.

Inasmuch as Marcum conceded everything and Duff yielded nothing it could not be considered a compromise but only an admission on the part of Marcum, which admission is admissible in evidence on a plea of adverse possession, but would not constitute an enforceable agreement, or sustain a plea in estoppel.

Perceiving no error in the record the judgment is affirmed.