D. C. BENNETT, Movant,

v.

Len HORTON et al., Respondents.

Supreme Court of Kentucky.

Dec. 18, 1979.

Rehearing Denied Feb. 12, 1980.

A. V. Conway, II, Beaver Dam, for movant.

R. Allen Wilson, Humphreys, Wilson, Johnson & Presser, Owensboro, for respondents.

STERNBERG, Justice.

The respondents, Len Horton and Linda Horton, seek to enforce an alleged oral contract for the purchase of real estate. The movant, D. C. Bennett, denies the existence of any such contract.

Movant is the owner of a tract of land near Beaver Dam, Kentucky. In 1967 movant built a residence on the property for a total cost of $96,000 ($86,000 construction of the house, $10,000 estimated value of land), and lived there for about two and one-half years. In 1970 movant rented the premises to his partner in his medical practice for a monthly rental of $200. Movant's partner moved out in the summer of 1972. The movant and the respondents, who were close personal friends, entered into discussions as to the rental of the property for $200 per month and the possible purchase of the premises for the sum of $75,000. The parties orally agreed to a rental of the property for $200 per month for a period of one year, at which time the respondents would pay the balance of the purchase price. A writing and bond for deed to this effect was prepared by movant's attorney; however, it was never signed by movant.

The respondents occupied the premises from September 1972 until March 1977. A receipt for the first month's rent showed that the payment was for the period of September 15, 1972, to October 15, 1972. Thereafter, payments of rent were made in cash, for which no receipts were given. After occupying the premises for a year or so, the respondents stopped making monthly rental payments. They did, however, give movant certain items of personal property which movant treated as rental income on his 1973, 1974 and 1975 income tax returns. Respondents contend that these items were given as part of the purchase price of the property in question.

During the period that respondents occupied the premises, they and the movant were jointly engaged in various business ventures, principally concerning oil, gas and coal. At the request of respondents, movant made several payments in support of these ventures. During this same period of time movant received what he identified as royalty payments. Other than these payments, movant received nothing to reflect his interest. The respondents contend that the monies advanced by movant were made for specific enterprises of which movant was aware and which proved to be unsuccessful (dry holes in oil exploration).

The respondents made improvements to the property of about $15,000, as well as paying taxes and insurance, all of which they seek to recover. Movant contends that he did not give his consent to the making of these improvements nor did he ever agree to reimburse respondents for them. It is shown that before vacating the premises the respondents removed virtually all of the improvements and left the premises in a bad state of repair.

In January 1976, movant informed the respondents that he was increasing the rent from $200 to $500 per month. From then until November 1976, no rent was paid, and movant notified respondents to vacate the property within thirty days. Respondents failed to vacate, and on December 13, 1976, movant filed a forcible detainer action

against the respondents in the Ohio County Court. On December 23, 1976, the county court entered an order for respondents to surrender possession of the property to movant.

The order of the Ohio County Court was traversed and the whole of the proceeding was transferred to the Ohio Circuit Court. In addition to the traverse, movant filed a civil action in the Ohio Circuit Court against respondents on December 30, 1976, in which he sought immediate possession of the subject property, together with costs and all other proper and equitable relief. The respondents filed an answer in which they alleged that they had a contract with movant for the purchase of the subject property. The charge did not say whether the contract was written or oral. In addition, the respondents pleaded that "Plaintiff should be estopped to deny the existence of said contract and it should be enforced;" that they took possession of the subject property under the terms and conditions of a contract; that on several occasions they offered to pay the balance due on said contract but that movant refused to accept said payment; and that they made substantial improvements to the real property and that by reason thereof movant should be barred by laches from proceeding.

On March 23, 1977, so much of the proceeding as pertained to the right of possession was tried, and on April 18, 1977, the trial judge filed findings of fact, conclusions of law, and a judgment in which the court found that respondents were wrongfully holding the property and thereupon ordered them to vacate. The remaining elements of this litigation were tried to a jury, and on December 30, 1977, a final judgment was entered.

Respondents appealed to the Court of Appeals, where the action of the lower court was reversed and the case remanded to the Ohio Circuit Court for a new trial. In its opinion the Court of Appeals said, "In actuality, the contract is the gravamen of the appellant's (now respondents) case." With this, we disagree. The gravamen of this case is the enforceability of a contract.

Throughout the record the respondents have referred to the writing as a written contract. The document was signed by respondents; however, it was never signed by the movant nor was it signed by anyone for or on behalf of movant. At best, the writing was nothing more than a unilateral offer to contract.

As to whether the movant should be required to convey the property to the respondents, two factors, or so-called doctrines, are raised: (1) the doctrine of part performance and (2) the doctrine of equitable estoppel. Throughout this case movant has insisted that the statute of frauds is dispositive of this issue. The statute of frauds (KRS 371.010), or so much thereof as is applicable, provides as follows:

"No action shall be brought to charge any person:

\* \* \* \* \* \*

(6) Upon any contract for the sale of real estate, or any lease thereof for longer than one (1) year;

\* \* \* \* \* \*

unless the promise, contract, agreement, representation, assurance or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent. \* \* \* "

In *Head v. Schwartz' Ex'r*, 304 Ky. 798, 202 S.W.2d 623 (1947), this court held that an alleged oral contract for the conveyance of real estate is within the statute of frauds; KRS 371.010 prohibits the sale or transfer of land by parol; and an action for specific performance cannot be maintained. Therein we further held, "Performance by the promisee in an oral agreement to devise land does not take the contract out of the provisions of the statute of frauds."

■ Irrespective of the argument that respondents make on this issue, the fallacy

is that they did not plead "substantial performance." They pleaded that they had made substantial improvements to the real estate, not that there was substantial performance of the contract. There is a great difference between the two. Nevertheless, not even partial performance will take the case from the statute of frauds. *Head v. Schwartz' Ex'r, supra.*

We next turn our attention to the propriety of the trial court in its handling of the doctrine of equitable estoppel. The Court of Appeals wrote, " * * * the lower court completely ignored the doctrine of equitable estoppel." Not so.

In an effort to avoid the catastrophic effect of the statute of frauds, the respondents pleaded that movant be estopped "to deny the existence of said contract." On the other hand, movant pleaded that the oral contract, if one actually existed, was not enforceable by reason of the statute of frauds. In other words, respondents pleaded that by the acts and conduct of movant he was estopped to rely on the statute of frauds as to whether there was a contract in existence.

■ The statute of frauds is a legislative enactment designed to prevent the perpetration of fraud. The doctrine of equitable estoppel is a remedy from fraud, limited only by equitable principles. Without cavil, it was shown that the writing was not signed by the movant (the party charged) or by anyone for or on his behalf. Neither the writing nor the alleged oral agreement in and of itself manifests any reason for not measuring its enforceability by the statute of frauds. Respondents' plea that movant was estopped from denying the existence of the alleged contract is quite different than charging movant with perpetrating a fraud on respondents or of taking some unlawful advantage of them. To apply the statute of frauds so as to estop the admission of the existence of the contract is something else. The statute of frauds does not lend itself to the issue of whether there is or is not a contract in existence. Its design and purpose is to prevent the enforcement of a contract unless, by reason of some exception, the statute of frauds would be found not applicable. *Purcell v. Campbell*, 261 Ky. 644, 88 S.W.2d 670 (1935). Movant argues there was no agreement in existence and, there not being an agreement, there was nothing to enforce. Albeit there was an oral agreement, it would be unenforceable under the statute of frauds. In *Cougler v. Fackler*, Ky., 510 S.W.2d 16 (1974), we said, "If the oral agreement was a legal contract, it was, nevertheless, unenforceable under the Statute of Frauds as an oral agreement to convey real estate."

■ The trial judge made and filed certain findings of fact and conclusions of law. From the conflicting evidence he found that (1) the subject property was owned by movant and he was entitled to its possession; (2) respondents and movant had negotiated toward the sale and purchase of the subject property; (3) there was no contract or agreement between movant and respondents for the purchase and sale of the subject property; (4) movant rented the subject property to the respondents, with respondents having the privilege at some unspecified future time to purchase it for $75,000; (5) respondents should be required to vacate the subject property and to take their personal property with them; (6) respondents made certain improvements to the premises; (7) respondents were not entitled to recover of the movant for any such improvements which had been made; (8) certain of the personal property received by movant were actually gifts from respondents; (9) the statute of frauds was applicable to the disposition of the issue and to whether there was an enforceable contract and adjudged that it was not; (10) movant should recover damages from the respondents in the sum of $3,200; and (11) movant paid to or for respondents in their joint ventures the sum of approximately $30,000 and received approximately the sum of $21,-

000, which movant treated as a return on his investment. Other findings of fact which were essential for the court to consider in arriving at its judgment were made and not reduced to writing. Failure of the court to do so, however, was not brought to the court's attention, and the failure to do so will not authorize a reversal of the judgment. CR 52.04. The Court of Appeals made findings of its own which are quite different from those made by the trial judge. The findings of fact made by the trial judge are not clearly erroneous, and neither the Court of Appeals nor this court may substitute its findings for those of the trial judge. *Cheaney v. Wright*, Ky., 474 S.W.2d 402 (1971).

■ The respondents charge that the trial judge erred in instructing the jury that a binding and enforceable contract for the sale of the subject property did not exist between movant and respondents is without substance. The purpose of instructions to a jury is to submit disputed issues of fact for their determination. The court found, as a matter of law, that a binding contract did not exist and took the determination of that issue from the jury. The jury must believe that there was no binding contract between the movant and the respondents by this instruction and that it was not necessary for it to make such a determination. The action of the trial judge in so instructing was not error.

■ The trial court having found that respondents were in possession of the property under a landlord and tenant relationship and not under a contract for the purchase of the subject property, the only obligation of movant to respondents was to repay anything which he had improperly received. This is the instruction made to the jury, with the further admonition that the jury could set off, in favor of movant, against improvements any rent owed by the respondents to movant. We find no error in the court's instruction. In addition, the court found that the improvements were removed by the respondents prior to the time they moved from the property.

■ The respondents argue that they should have been permitted to introduce the writing in evidence and should have been permitted to testify as to its contents. The court found that there was no contract. Since there was no contract, there was nothing to bring to the attention of the jury.

The respondents also charge that movant's main defense is unsupported by the evidence. The record reveals that movant's defenses or challenges to respondents' right of recovery to be: (1) denial of the existence of a contract or agreement for the sale of the subject property; (2) any verbal contract for the sale and purchase of the subject property, if any existed, is barred by the statute of frauds; (3) an ongoing business arrangement with respondents; and (4) the money and other personal property received by movant were not received as a result of any contract for the purchase or sale of the subject property. The trial court, having viewed the witnesses and having evaluated their testimony, found that each of said defenses was supported by evidence of sufficient probative value likely to induce a conviction in the minds of the jurors, with which we concur.

The decision of the Court of Appeals is reversed. The judgment of the Ohio Circuit Court is affirmed.

PALMORE, C. J., and AKER, CLAYTON, LUKOWSKY, STEPHENSON and STERNBERG, JJ., sitting.

All concur.