RENDERED: OCTOBER 28, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0175-DG

CHARLES ADAMSON                                                         APPELLANT

ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-0150
UNION CIRCUIT COURT NO. 15-CI-00099

V.

JONATHAN ADAMSON; AND PAUL                                    APPELLEE
ADAMSON

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>REVERSING</u>**

This case is before the Court on appeal of an order to enforce a

settlement agreement. Charles Adamson,[1] the Appellant, appeals the opinion of

the Court of Appeals affirming the order and judgment of the Union Circuit

Court. We granted discretionary review to determine whether the Statute of

Frauds is applicable. For the following reasons, we reverse the Court of Appeals

and remand to the Union Circuit Court with instructions to partially vacate its

order and judgment.

## I. Factual and Procedural Background

Rickie Adamson died in 2013. He left behind a wife, Loueva Adamson,

who was stepmother to his three sons: Jonathan and Paul Adamson, the

---

[1] Because the parties and other relevant persons share a last name, we will refer
to them by their first names.

Appellees, and Charles. Long before his death, he and his wife purchased a farm (the farm) jointly, with rights of survivorship. Upon Rickie's death, Loueva sought to probate a holographic will purported to be that of her husband. The will left the entirety of his estate to Loueva. The Union District Court approved settlement of the estate on February 14, 2014.

In May of 2014, Loueva sold the farm to Charles and his wife, Vanda Adamson. The recorded deed lists both Charles and Vanda as purchasers, and they are tenants-in-common.[2] It is undisputed that the farm was never a part of the estate nor has any party contested the validity of the deed.

Subsequently, Jonathan and Paul had a forensic document examination done upon the will. The examiner concluded the will was a forgery. Upon that basis, they filed an action in Union Circuit Court in August 2015. The named defendants were Loueva Adamson, individually and as Executrix of Rickie Adamson's estate, and Charles Adamson.

The Hon. Stephen M. Arnett was engaged as attorney for Loueva, the estate, and Charles. He filed a motion to dismiss on Charles' behalf because there was no allegation of wrongdoing against him regarding the alleged forgery. Jonathan and Paul opposed dismissal, arguing that Charles was a potential beneficiary. The trial court agreed and denied the motion.

Eventually, a mediation was conducted on June 29, 2017. As is typical, Arnett and his clients were in one room and Jonathan and Paul with their attorney in another. The parties evidently came to an agreement regarding the

---

[2] KRS 381.050(1)

lawsuit. The three brothers then entered a room together with no other party present. In this meeting, some kind of oral agreement was reached regarding the farm.[3]

At a hearing on June 11, 2018, Charles testified he thought they reached an agreement to deed the farm over to an LLC, which he would operate. Additionally, he would determine the shares of ownership in the LLC. Finally, upon the death of his brothers, their interest in the LLC would pass to him and his heirs. There was no testimony heard to the contrary. Jonathan and Paul contend the deal was to deed the farm over to an LLC in which all three brothers would own equal shares. They agreed, however, that Charles would manage the LLC.

The 8th clause of the mediation agreement states, in pertinent part:

> As a part of this agreement, the referenced Sale Agreement between Respondent, Loueva Adamson, and Respondent, Charles Adamson and Vanda Adamson, will except as hereinafter set out, be voided and set aside in its entirety. Simultaneous with the voiding of the original Sale Agreement, the Respondent, Loueva Adamson, and Respondent, Charles Adamson, and his wife, Vanda Adamson, each agree to execute another Contract of Sale Agreement (Second Sale Agreement) wherein they agree to sell the farm to Respondent, Charles Adamson, and to Petitioners, Paul Adamson and Jonathan Adamson, equally, as tenants in common, for the the [sic] sale price of Three Hundred Fifty Three Thousand Nine Hundred Nine Dollars ($353,909.00) . . .

The 9th clause of the mediation agreement states, in pertinent part:

---

[3] We will refer to this as the "farm agreement" as distinct from the mediation agreement, but the former is a part of the latter. The mediation agreement contains a total of 12 clauses with the farm agreement being contained in the 8th and 9th clauses. There is no dispute before us about the validity of the mediation agreement in any other respect except as it relates to the farm.

3

> With respect to the farm, Petitioner, Paul Adamson and Jonathan Adamson; and Respondent, Charles Adamson, further agree that a business entity to be called *Bluegate Farms, LLC* . . . will be formed in accordance with the laws of the Commonwealth of Kentucky, which will be equally owned by Paul Adamson, Jonathan Adamson, and Charles Adamson . . . all parties agree that . . . Charles Adamson will be designated as the manager of Bluegate with authorities and responsibilities commensurate with that position . . .

Because of the complexity of the mediation agreement, the mediator agreed to be the one to reduce the terms to writing, including the farm agreement. Charles testified he told the mediator the terms of the farm agreement, but his brothers were not present when he did. He also testified he assumed his brothers told the mediator the same terms as well, but he was not present if they did. When the written mediation agreement was completed is unclear. Charles testified he did not see the mediation agreement in writing until approximately two months after the mediation.

Regardless of the exact timeframe, the trial court found when Arnett took the mediation agreement to Charles and his wife for their signatures, he refused to sign it as the terms did not match what he believed the oral agreement to have been. Arnett informed Charles he could no longer represent him as counsel and advised him to seek new counsel. Shortly thereafter, Charles acted upon that advice, and new counsel was officially substituted in November 2017.

Concurrently with the change in Charles' representation, Jonathan and Paul had filed a "Motion to Enter Judgment." Substantively though, they sought to enforce the mediation agreement. The motion was taken under

4

advisement, but no ruling was forthcoming. The motion was re-noticed in April 2018, and a hearing was held on May 14, 2018. At this hearing, the trial court determined that Charles would need to testify before it could make a ruling. Also, Arnett represented to the court that the farm agreement was "outside of my representation" of Charles.

On June 11, 2018, Charles testified regarding the details of the farm agreement, which were previously discussed. The only other issues presented in this case are as follows. First, the apparent dispute as to whether Arnett was Charles' attorney. Charles testified that he never hired Arnett which is technically true. But Arnett made several filings on behalf of Charles, and he admitted that he was privy to private conversations between himself, Arnett, and Loueva.

The second issue is the testimony regarding the relationship between Charles and Vanda. Charles testified his brothers had asked him at the mediation if she would agree to any deal they reached regarding the farm. Charles responded he would tell her to do so. Counsel sought clarification, and he testified his statement to his brothers was "I'll just tell her to if we come to an agreement."

The trial court issued its order and judgment in December 2018. The substantive rulings of the trial court were that the Statute of Frauds was not applicable, but if it was, it was satisfied. This latter ruling was based on a determination that Arnett was Charles' agent and signed the mediation agreement on his behalf. The trial court also ruled that Charles was his wife's

agent at the mediation agreement thereby binding her to its terms as well. Finally, the trial court ruled that Charles should be equitably estopped from arguing that he was not his wife's agent and that she was a necessary and indispensable party. The trial court adopted the mediation agreement as part of its judgment and ordered it enforced. Charles appealed.

Subsequently, the Court of Appeals ruled that the Statute of Frauds was not applicable because the farm agreement was not a contract of sale but "merely a contractual, written agreement to resolve outstanding issues between the parties in a civil dispute." The Court of Appeals found that Charles was his wife's agent at the mediation based upon apparent authority, citing solely to Charles' statement that he would tell his wife to go along with any deal. The Court of Appeals also applied equitable estoppel to estop Charles from arguing he was not his wife's agent and that she was an indispensable party on appeal. Charles sought discretionary review from this Court, which we granted.

We now address the merits of the appeal.

## II. Standard of Review

On all issues discussed our standard of review is *de novo*. The interpretation and application of statutes is a question of law and the lower courts' judgments are not entitled to deference. *Estate of Benton v. Currin*, 615 S.W.3d 34, 36 (Ky. 2021). Settlement agreements are a type of contract; therefore, their interpretation is a question of law. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003). The question of whether an agency relationship

6

exists is a question of law when the facts giving rise to the relationship are undisputed. *Nazar v. Branham*, 291 S.W.3d 599, 606 (Ky. 2009).

**III. Analysis**

**A. The Statute of Frauds is Applicable to the Farm Agreement**

Both the trial court and the Court of Appeals ruled that the Statute of Frauds was inapplicable, describing the settlement agreement as not a contract for the sale of land but "merely a contractual, written agreement to resolve outstanding issues between the parties in a civil dispute." The pertinent part of the Statute of Frauds states,

> No action shall be brought to charge any person: . . . Upon any contract for the sale of real estate, or any lease thereof for longer than one year; . . . unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent.

KRS 371.010(6).

The Statute of Frauds "prohibits the sale or transfer of land by parol . . ." *Bennet v. Horton*, 592 S.W.2d 460, 462 (Ky. 1979).

> [T]he effect of the statute of frauds on oral contracts for the sale of land is to render the contract *unenforceable* by *either* party, [but] not void the agreement. This means that the parties are free to recognize and perform the oral contract, but once the statute of frauds is raised, the oral contract becomes unenforceable, regardless of which party filed suit.

*Smith v. Williams*, 396 S.W.2d 296, 299 (Ky. 2012) (internal citations omitted). The statute uses the term "sale" which in legal parlance means "transfer of property or title for a price." *Black's Law Dictionary*, (11th Ed., 2019). But throughout the history of the Commonwealth, this Court and its predecessors

7

have applied the statute to several transactions beyond the strict confines of that definition.

The statute has been applied to the exchange[4] of property and to an oral agreement to submit a land dispute to arbitration, *Stark's Heirs v. Cannady*, 3 Litt. 399, 13 Ky. 399 (1823); to oral contracts to partition land, *Barnett v. Barnett*, 283 Ky. 710, 142 S.W.2d 975 (1940); to oral agreements to merely reconvey[5] land, *Blevins v. Blevins*, 143 Ky. 220, 136 S.W. 195 (1911); to oral gifts of a life estate, *Cannon v. Carr*, 292 Ky. 793, 168 S.W.2d 21 (1943); to grants of right of ways and easements, *Goodwin v. Crider*, 6 Ky. L. Rptr. 48, 12 Ky.Op. 645 (1884),;and grants of coal in the ground, *Wakenva Coal Co. v. Johnson*, 234 Ky. 558, 28 S.W.2d 737 (1930). Thus, all forms of primary conveyances at common law have been held to be covered by the Statute of Frauds. As for secondary conveyances, the statute has been applied to a parol surrender of disputed land, *Duff v. Turner*, 201 Ky. 501, 256 S.W. 1105 (1923), and to assignments of mineral leases, *Owen v. Dayson*, 562 S.W.2d 647 (Ky. 1977). It is to be noted that the language of the pre-KRS statute differs only in

---

[4] At common law, "[a]n exchange is a mutual grant of equal interests, the one in consideration of the other . . . The estates exchanged must be equal in quantity; not of value, for that is immaterial, but of interest." 3 Tucker's Blackstone 322 (St. George Tucker ed., The Lawbook Exchange, Ltd. 2011) (1803) (internal citations and emphasis omitted).

[5] In the *Blevins* case, a father had deeded a piece of land to his son. Some years later, the father alleged the son had agreed to "reconvey" a portion of that property to him when called upon. There was no consideration alleged nor discussion of purchase price, as typical of an option contract. Thus, it would seem the court applied the Statute of Frauds to a simple feoffment, that being defined as a "gift of any corporeal hereditament to another." 3 Tucker's Blackstone 310 (St. George Tucker ed., The Lawbook Exchange, Ltd. 2011) (1803).

cosmetics; it is otherwise identical to the current version. *Cf. Wilson v. Adath Israel Charitable & Educ. Ass'n's Agent*, 262 Ky. 55, 89 S.W.2d 318, 319 (1935).

From this brief survey of the case law, it is apparent the Court of Appeals' interpretation and application of the Statute of Frauds would undo centuries of precedent. The description of the farm agreement as a "contractual, written agreement to resolve outstanding issues . . . in a civil dispute" merely describes the events surrounding the farm agreement. It still leaves the question of what manner of conveyance the farm agreement contained, a question the lower courts side-stepped. Our precedent makes clear that whatever type of conveyance the lower courts perceived it to be, so long as there is a purpose to transfer title to land, the Statute of Frauds is operable. *Bennet*, 592 S.W.2d at 462.

Looking to the mediation agreement, however, Paragraph 8 states that the contract of sale from Loueva to Charles and Vanda would be voided and that "each [party] agree[s] to execute another Contract of Sale Agreement (Second Sale Agreement) wherein they agree to sell the farm . . ." from Loueva to the three brothers. It is clear then that the Court of Appeals and the trial court erred in their description of the agreement. It is manifestly a contract of sale both on its face and in substance.

Jonathan and Paul sought to enforce this contract of sale in a court of law, and Charles pled the Statute of Frauds in defense. The statute is operable,

9

and the farm agreement must be proven by a signed writing or it is unenforceable. *Williams*, 396 S.W.2d at 299.

## B. The Statute of Frauds is not Satisfied

Although the trial court ruled the Statute of Frauds was inapplicable, it also ruled that the mediation agreement signed by Charles' former attorney, Arnett, is a writing signed by an authorized representative thus "no issue with the Statute of Frauds exists thereunder." It is necessary to review this ruling as well.

There is a distinct difference between an oral agreement and a written memorial of an oral agreement. "To be sufficient under the statute of frauds, the written memorandum of sale must be signed by the party sought to be charged, and it is well settled in this state that the party to be charged is the one owning the real estate to be conveyed." *Smith v. Ballou*, 211 Ky. 281, 277 S.W. 286, 287 (1925). "The fact that the vendees have signed gives them no right of action against the vendor, in the absence of his signature." *Armstrong v. Lyen*, 148 Ky. 59, 145 S.W. 1120 (1912). Thus, until the mediation agreement[6] was signed by Charles and Vanda, or their representative, it cannot be said to constitute the agreement, much less is it enforceable. Neither Charles nor Vanda signed the mediation agreement. To get around this obstacle the trial court ruled that Arnett was Charles' authorized representative and his signature bound him.

---

[6] Our discussion assumes *arguendo* the mediation agreement satisfies the writing requirement under the Statute of Frauds.

The issue before the Court is whether Arnett was Charles' agent as it pertained to the farm agreement at the time Arnett signed the agreement. Because Charles did not dispute the facts surrounding Arnett's representation of him, only whether there was a principal-agent relationship as to the farm agreement, the trial court's finding of agency is not entitled to deference as a finding of fact but is rather a question of law. *Nazar v. Branham*, 291 S.W.3d 599, 606 (Ky. 2009).

An attorney-client relationship is obviously one of agency, but it is the principal who defines the scope of the agency. *Baldwin v. Mollette*, 527 S.W.3d 830, 834 (Ky. App. 2017). "[N]either the authority of an agent, nor the scope of his agency, can be established by the mere declarations of the agent . . ." *Rice & Hutchins' Cincinnati Co. v. J.W. Croghan & Co.*, 169 Ky. 450, 184 S.W. 374, 376 (1916). But he may testify to prove his agency or the facts from which agency can be inferred. *Id.* Additionally, "testimony of the alleged agent is competent to negative the existence of the agency." *Id.* (internal quotation and citation omitted).

Charles made a half-hearted dispute as to whether Arnett was his lawyer. Both the trial court and Court of Appeals found that contention to strain credulity as the facts showed that Arnett had represented him for almost three years; made several filings on his behalf; and Charles was privy to private conversations between himself, Loueva, and Arnett. We agree that Arnett was Charles' attorney from 2015 to approximately August 2017, including the day of the mediation.

11

But it is critical to recall the facts surrounding this representation. The case originated in 2015 and was initially just a will contest. Charles was listed as a defendant not because of any allegation of wrongdoing but because he was a potential beneficiary. Thus, Arnett was retained on his behalf for the civil dispute regarding the estate. This is demonstrated by the fact that he was also retained on behalf of Loueva, individually and as Executrix. The farm, however, was never mentioned in the original Complaint nor did the trial court have any cognizance of it until Jonathan and Paul filed their Motion to Enter Judgment, urging the trial court to adopt the mediation agreement as its own in 2017.

Additionally, the fact that Arnett took the mediation agreement to be signed by Charles and Vanda is strong proof tending to show that Arnett did not believe himself vested with the authority to sign the agreement on behalf of Charles. And there is no proof whatsoever that his signature could bind Vanda, as he was never her attorney. But dispositive to this Court are the following three facts.

First, the trial court's order and judgment recounted that Arnett advised Charles that he could no longer represent him, and he should seek other counsel after he refused to sign the mediation agreement. At that point, the lawyer-client relationship was functionally terminated. The record bears out that Charles acted on that advice. Secondly, Arnett stated at the hearing on May 14, 2018, that the farm agreement between the three brothers was "outside of my representation" of Charles. He disclaimed any knowledge of the contents of the negotiation between the three brothers, and never even

12

attempted to explain his understanding of the farm agreement. Finally, the record contains no indication as to when Arnett signed the mediation agreement. Indeed, the mediation agreement submitted in the record is not signed by any party.

These facts combined demonstrate it was error[7] to find that Arnett was Charles' authorized representative capable of binding him to the farm agreement. It is indisputable that Arnett could not bind Vanda. Therefore, there was an agreement to enter into a sale of land but there was no writing signed by the persons to be charged. Thus, the Statute of Frauds bars enforcement of the farm agreement.

## C. Vanda Adamson's Role in the Litigation

The chief question presented by this case was the applicability of the Statute of Frauds to the farm agreement. Vanda Adamson, as a tenant-in-common, has an obvious interest in the farm. Jonathan and Paul argue that the farm agreement included both Charles and Vanda's interest in the property, and the mediation agreement bears that out.

Both courts below determined that Charles was an agent for his wife. Both based this finding on the apparent authority of Charles to act for his wife at the mediation. "Apparent authority is created when the *principal* holds out to others that the agent possesses certain authority that may or may not have been actually granted to the agent." *Kindred Nursing Ctrs. Ltd. P'ship v. Brown,*

---

[7] While our review of Arnett's capacity as authorized representative of Adamson is *de novo* as a question of law, we believe the facts would justify reversal under a clearly erroneous standard as well. CR 52.01.

13

411 S.W.3d 242, 249 (Ky. 2011). Additionally, "it is a rule, universally recognized, that the declarations of an agent are inadmissible to prove the fact of agency or that he was acting within the scope of his authority in a particular transaction." *Id.* (internal quotation/citation omitted).

In this case, both courts predicated their finding of apparent authority solely upon the verbal declaration of Charles at the mediation. When asked about the absence of his wife and whether she would go along with any agreement reached at mediation, Charles responded "I'll just tell her to if we come to an agreement." This does not suffice to find apparent authority for agency, as it is merely a verbal declaration by the alleged agent. *Id.* There is no evidence whatsoever about Vanda's intentions, actions, or words purporting to hold out her husband as her agent. Moreover, the courts below overlooked controlling precedent on this precise issue.

In the case of *Lazarus' Adm'x v. Hall,* 287 Ky. 199, 152 S.W.2d 592 (1941), our predecessor court addressed the question of agency powers between a husband and wife. It ruled, "[m]arital relations do not create a presumption of agency between husband and wife when dealing with each other's property and such agency, when denied, must be proved the same as any other agency." *Id.* at 595. The party asserting the existence of the agency must prove it, and applying that rule, the court held even express statements of the wife that "she was the agent of her husband . . . would not be admissible in evidence to establish agency." *Id.*

14

In the instant case, the converse is true. Express statements of the husband that he was his wife's agent will not suffice to establish apparent authority. Even so, there was not an express statement of agency here. Charles simply asserted that he would make her go along with any deal. Not only does that statement imply a coerciveness inappropriate to a principal-agent relationship, but it also implies that Charles had, in fact, not even discussed with Vanda whether he would be her agent at the mediation. It was unreasonable for the Jonathan and Paul to rely on the mere declarations of their brother, and it was error for the courts below to predicate a finding of apparent authority upon them. This ruling merely reinforces our holding that the Statute of Frauds bars enforcement of the farm agreement as to Vanda.[8]

Finally, and briefly, both the trial court and Court of Appeals held that Vanda was not a necessary and indispensable party. Because of our ruling on the Statute of Frauds this issue is not controlling upon us,[9] but we would remind the lower courts that in "controversies concerning title to real estate all of the persons who are interested under the title in litigation are necessary parties." *Lunsford v. Witt*, 309 S.W.3d 348, 349 (Ky. 1958). *See also Slone v. Casey*, 194 S.W.3d 336 (Ky. App. 2007).

---

[8] Our ruling necessarily overrules the granting of equitable estoppel by the lower courts. Equity follows the law. "Wherever the rights of the parties are clearly governed by rules of law, courts of equity will follow such legal rules." *Kaufman v. Kaufman's Adm'r*, 292 Ky. 351, 166 S.W.2d 860, 867 (1942).

[9] "For purposes of appeal, a person is a necessary party if the person would be a necessary party for further proceedings in the circuit court if the judgment were reversed." *McBrearty v. Ky. Cmty. & Tech. College Sys.*, 262 S.W.3d 205, 211 (Ky. 2008). Because our reversal in this case bars enforcement of the farm agreement, Vanda is not a necessary party in any further proceedings in the trial court.

**D. Relief Granted and Remand to the Union Circuit Court**

Typically, contracts that convey property both real and personal will be regarded as single and entire. *Bitzer v. Moock's Ex'r & Trustee,* 271 S.W.2d 877, 879 (Ky. 1954). But if the "consideration for the devise of real property is separate and severable from the consideration for the bequest of personalty[,]" then the contract may be deemed severable. *Id.* The consideration for the mediation agreement as to the estate and the consideration for the farm agreement are severable here. The estate was settled on the consideration that the brothers would receive certain items from their father's estate. In return, Jonathan and Paul would cease cooperating with the law enforcement investigation into the alleged forgery of Rickie Adamson's will by Loueva. The consideration for the farm agreement, however, was $353,909.00. Therefore, the consideration for the two agreements are susceptible of division and apportionment in accordance with *Bitzer. Id.*

Thus, we remand to the Union Circuit Court with instructions to vacate its judgment and order insofar as it pertains to the farm agreement, specifically clauses 8 and 9. The mediation agreement as to the estate is valid; however, any ambiguities or errors as to the written mediation agreement's divergence from what was orally agreed to by the parties should be resolved by the trial court after proper findings of fact.

## IV. CONCLUSION

For the foregoing reasons, we hold that the Statute of Frauds is applicable. The farm agreement to be enforced was one for a sale of land, but

16

there was no signed writing by the persons sought to be charged or their authorized representative. Therefore, enforcement of the farm agreement is barred. The opinion of the Court of Appeals is reversed. We remand to the Union Circuit Court with instructions to vacate its order and judgment as to clauses 8 and 9. Any errors or ambiguities in the rest of the mediation agreement may be remedied upon findings of fact by the trial court.

     All sitting. All concur.

COUNSEL FOR APPELLANT:

Robert B. Frazer
Frazer & Massey

COUNSEL FOR APPELLEE:

William Clint Prow