RENDERED: MARCH 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0157-MR

JOVINIANO ALBINO SANTIAGO                      APPELLANT

                   APPEAL FROM BELL CIRCUIT COURT
v.           HONORABLE ROBERT V. COSTANZO, JUDGE
                     ACTION NO. 19-CI-00267

TERESA BERRY                                        APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

MAZE, JUDGE: Joviniano Albino Santiago (Santiago) appeals from an order of

the Bell Circuit Court granting Teresa Berry (Berry) joint custody of his child

based on a finding that Berry qualified as a *de facto* custodian. We agree with

Santiago that Berry failed to present clear and convincing evidence that Berry was

the primary caretaker and financial supporter of the child for the requisite period.

Hence, we reverse the order granting joint custody and remand with directions to dismiss the petition.

The underlying facts of this matter are not in dispute. Santiago is the father of J.B., who was born in November 2014. Shortly after birth, J.B. was removed from the custody of her mother, Amanda Brooks (Brooks). Following a hearing, the Bell District Court placed J.B. in the custody of Brooks' mother, Berry. On July 16, 2015, Santiago established paternity of J.B. and was granted custody of the child.

On August 13, 2019, Berry filed a verified petition asserting that she was a *de facto* custodian of J.B. and seeking custody of the child. Brooks did not file an answer to the petition or participate in the proceedings. The trial court appointed a friend of the court, who submitted a report detailing his investigation of both parties and the child.[1] The court also scheduled an evidentiary hearing, which was held on December 16, 2019.

At the hearing, the parties agreed that, shortly after the paternity determination, Santiago, Brooks, and J.B. moved into a mobile home on Berry's property. Berry lived in the mobile home with them for a while to assist with the child. The parents and the child moved to a different mobile home later in 2015,

---

[1] *See Morgan v. Getter*, 441 S.W.3d 94 (Ky. 2014), to explain the distinct roles served by a guardian *ad litem* and a friend of the court.

-2-

but they relocated back to Berry's property after about five to seven months. Berry again resided with them in the mobile home for a while, then moved back to a house on the same property.

The relationship between Santiago and Brooks ended in 2017, and Brooks moved from the mobile home. Brooks was incarcerated for a significant period of J.B.'s life both during and after her relationship with Santiago, and she was not significantly involved in J.B.'s care and support. However, Santiago still lived at the mobile home except for the period he was working out of town. Santiago and the child moved from the mobile home in March 2019. They now live in Tennessee with Santiago's new wife.

The parties mainly disputed the amount of support which Santiago provided. Santiago did not pay Berry rent, but he testified that he paid the utility bills and made repairs on the trailer. Berry admits that Santiago paid the utility bills but testified that he only made a few repairs to the mobile home. Santiago also states that he paid the property taxes on the mobile home for two years, but Berry testified he only paid one year. Throughout this period, Santiago was employed at a restaurant in Middlesboro, except for several months in the summer of 2017 when he was working in Knoxville, Tennessee. Santiago testified that he provided financial support for J.B. throughout her life. Berry disputes this, stating

that Santiago only occasionally provided clothes for the child and never any financial assistance.

In addition, Santiago testified that J.B. only stayed with Berry twice a week while he was working late and during the summer of 2017 when he was working out of town. He also stated that he paid Berry $25 a day for babysitting. In contrast, Berry testified that Santiago only stayed with J.B. twice a week until 2017, and then very little after that time. Berry states that Santiago never paid her for babysitting. Santiago admitted that he had granted Berry permission to enroll J.B. in preschool, to take J.B. to the doctor, and to access the child's medical records. Berry testified that she was primarily responsible for taking J.B. to the doctor and that Santiago accompanied them only on a few occasions.

On January 7, 2020, the trial court entered findings of fact, conclusions of law, and an order granting Berry's request for custody of J.B. The court found that J.B. resided with Berry "for a time period in 2017 until March 29, 2019, when [Berry] was the primary caregiver for, and financial supporter of the minor child." Based upon this finding, the court granted joint custody of J.B. to Santiago and Berry, with Santiago designated as the child's residential custodian. The court gave Berry visitation with J.B. in accordance with the schedule adopted in that circuit. Subsequently, the trial court entered an amended order specifying

the times and location for exchange of the child for visitation. This appeal followed.[2]

Santiago argues that Berry failed to establish that she was a *de facto* custodian of J.B. A "de facto custodian" means "a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older[.]" KRS[3] 403.270(1)(a). Once a court determines a person qualifies as a *de facto* custodian, the court shall give that person the same standing in custody matters that is given to parents. KRS 403.270(1)(b).

"A trial court's findings of fact in a domestic matter can only be set aside by a reviewing court if those findings are clearly erroneous." *Mullins v. Picklesimer*, 317 S.W.3d 569, 581 (Ky. 2010) (citing *Reichle v. Reichle*, 719 S.W.2d 442 (Ky. 1986); CR[4] 52.01). "To determine whether findings are clearly erroneous, reviewing courts must focus on whether those findings are supported by substantial evidence." *Id.* (citing *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.

---

[2] The parties have advised this Court that Brooks died on January 30, 2020, after the filing of the notice of appeal in this case.

[3] Kentucky Revised Statutes.

[4] Kentucky Rules of Civil Procedure.

2003)).  "[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."  CR 52.01.  Furthermore, a reviewing court is not authorized to substitute findings of fact for those of the trial court.  *Bennett v. Horton*, 592 S.W.2d 460, 464 (Ky. 1979).  Our review of related legal issues and questions of law is *de novo*.  *Ball v. Tatum*, 373 S.W.3d 458, 464 (Ky. App. 2012).

The controlling issue in this case is whether Berry provided clear and convincing evidence that she served as the primary caretaker and financial supporter of J.B. for at least one year.  "[C]lear and convincing evidence" requires the party with the burden of proof to produce evidence substantially more persuasive than a preponderance of evidence, but not beyond a reasonable doubt.  *Fitch v. Burns*, 782 S.W.2d 618, 622 (Ky. 1989).  A party may not achieve *de facto* custodian status for any period during which the purported custodian shares caregiving or financial support duties with a biological parent.  *See Consalvi v. Cawood*, 63 S.W.3d 195, 198 (Ky. App. 2001), *abrogated on other grounds by Moore*, 110 S.W.3d 336.

In *Consalvi*, the Court stated "[i]t is not enough that a person provide for a child alongside the natural parent; the statute is clear that one must literally stand in the place of the natural parent to qualify as a *de facto* custodian."  *Id.*  Likewise, the Court in *Mullins* stated that "parenting the child alongside the natural parent does not meet the de facto custodian standard in KRS 403.270(1)(a)."  317

-6-

S.W.3d at 574 (citation omitted). Even if a non-parent provides care or financial support for a child, if such care and support is in conjunction with a natural parent, then the non-parent will not qualify as a *de facto* custodian. *Brumfield v. Stinson*, 368 S.W.3d 116, 119 (Ky. App. 2012).

The facts of the current case are substantially similar to those presented in *Brumfield*. In that case, the mother and her child were supported by the Stinsons, who were grandparents of another child of hers. The Stinsons offered to help care for the child while Mother was at work. Initially, the Stinsons would keep the child at their home while Mother worked nights, returning him to Mother's apartment when she was home. But for a brief period, Mother and the child lived with the Stinsons. *Id.* at 117.

As in the current case, the trial court in *Brumfield* found that the Stinsons qualified as *de facto* custodians. This Court reversed that finding. Although there was evidence that the Stinsons provided significant financial support and caregiving for the child, this Court held that "the *de facto* period could not commence as long as they were 'co-parenting' with [Mother]." *Id.* at 119. Since the Stinsons failed to prove that they stood in the place of the natural parent, the Court held that the trial court erred in finding that there was clear and convincing evidence that the Stinsons were *de facto* custodians as defined by KRS

403.270 and our case law. *Id. See also Perry v. Goodwin*, No. 2019-SC-000474-DE, 2020 WL 1846874 (Ky. Mar. 26, 2020).

Likewise, the parties in this case dispute how much time Santiago spent with the child. But there is no dispute that he was present in the child's life since 2015. Berry admits that Santiago paid the utility bills for the mobile home while they lived there, as per their agreement. She also admitted that Santiago bought clothes and food for the family, although she contends that his contributions were minimal.

At most, Berry was the primary caretaker and financial supporter for J.B. for about three months in 2017, while Santiago was working in Knoxville. After that time, he returned to living in the mobile home with the child. Berry concedes that Santiago worked long hours during this time but still made an effort to provide for the child and remain a presence in her life.

As in *Brumfield*, Berry provided significant financial support and caretaking for the child for at least a year after Santiago returned from Knoxville. But we cannot find clear and convincing proof that her role was primary to the substantial exclusion of the natural parent. Therefore, the trial court erred in finding that Berry qualified as a *de facto* custodian under KRS 403.270. And since Berry does not assert that Santiago was unfit to have custody of J.B. or waived his

superior right to sole custody, we also conclude that the trial court erred by granting Berry joint custody of J.B.

Accordingly, we reverse the order of the Bell Circuit Court and remand with directions to dismiss Berry's custody petition.

ALL CONCUR.

BRIEF FOR APPELLANT:

Russell D. Alred
Harlan, Kentucky

BRIEF FOR APPELLEE:

Brandon West
Barbourville, Kentucky